Argued and submitted March 10; reargued September 20; resubmitted October 27, decision of the Court of Appeals and judgment of the circuit court reversed October 27, reconsideration denied December 13, 1994

David M. ABERCROMBIE,
and J. G. "Glen" Vannoy and
Marilyn Vannoy, husband and wife,
Josef Diamond and Clise Realty, Inc.,
*Respondents on Review,*

*v.*

HAYDEN CORPORATION,
a Delaware corporation,
dba Hillman Properties Northwest,
*Petitioner on Review.*

(CC 9007-04517; CA A71590; SC S40809)

883 P2d 845

Peter C. Richter, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause on behalf of respondents on review. With him on the responses was William H. Walters, Portland.

Alan K. Brickley, Portland, filed a brief on behalf of *amici curiae* Chicago Title Insurance Company of Oregon, Oregon Title Insurance Company, Stewart Title of Oregon, Inc., and Transamerica Title Insurance Company.

Arden E. Shenker, of Tooze, Shenker, Duden, Creamer, Frank & Hutchison, Portland, filed a brief on behalf of *amici curiae* Oregon Bankers Association and Oregon Mortgage Bankers Association. With him on the brief was Gregory L. Baird, Portland.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

UNIS, J.

## UNIS, J.

This case raises issues concerning the application of the parol evidence rule, ORS 41.740,[1] the text of which is set out *infra*, 320 Or at 285-86, to certain quitclaim deeds.

In August 1989, plaintiffs contracted[2] to purchase various commercial properties from defendant for $22,350,000, pursuant to a written "Property Purchase Agreement." Plaintiffs made an initial non-refundable $10,000 deposit and a deposit of $100,000 into escrow as earnest money. A "memorandum of the purchase and sale agreement" was recorded.

The property purchase agreement specifies a closing date, but provides that the agreement may be modified, in writing only, and that the closing date may be extended, also in writing only. Plaintiffs executed two identical quitclaim deeds to the properties, which provide in part:

> "[Plaintiffs] release[] and quitclaim[] to [defendant] the real property [at issue in this case].

> "* * * This deed is being recorded for the purpose of clearing from title all of [plaintiffs'] right, title and interest to the property arising from a Memorandum of Purchase and Sale Agreement * * * recorded in * * * Multnomah County Records[.]"

The deeds were given to the escrow agent with instructions to record them in the event that the transaction failed to close on the closing date.

On five separate occasions, the parties extended in writing the closing date. The fifth extension provided in part:

> "Purchaser [plaintiffs] shall have until the close of business on July 12, 1990 ('Closing Date'), to close the purchase of the Property * * *. The Purchaser's obligation to close by that date is absolute and unconditional except as expressly provided for in this Extension and Amendment.

---

[1] In the context of the sale of goods under the Uniform Commercial Code, parol evidence is restricted by ORS 72.2020.

[2] Actually, only plaintiff David M. Abercrombie signed the original agreement. He later assigned a portion of his interest in the agreement to plaintiffs J.G. "Glen" Vannoy and Marilyn Vannoy. Plaintiffs Josef Diamond and Clise Realty, Inc., are Abercrombie and the Vannoys' putative financiers. For convenience, we use the term "plaintiffs" even when we refer only to Abercrombie and the Vannoys.

"* * * In the event Purchaser does not close this transaction on the Closing Date set forth above, and the Closing Date is not extended by mutual agreement of the parties, the Additional Earnest Money [provided for by this extension] shall be released to Seller [defendant] and the [Property Purchase] Agreement shall terminate and be of no further force or effect.

"* * * * *

"* * * If the Agreement terminates pursuant to the terms hereof on [July 12, 1990,] Title Company shall record such Quitclaim Deeds upon receipt of notice of the termination from seller [defendant]."

Plaintiffs were unable to close on July 12. On that date, plaintiffs notified the escrow agent that the "transaction will not close today as scheduled" and instructed the escrow agent to release to defendant all funds held in escrow, "[p]ursuant to the terms of the Purchase and Sale Agreement and its five extensions." Plaintiffs also notified the escrow agent that they "acquiesced" in the recording of the quitclaim deeds. Defendant instructed the escrow agent to record the quitclaim deeds the next day. On July 13, the escrow agent disbursed the earnest money to defendant and recorded the quitclaim deeds.

On July 23, defendant informed plaintiffs that the property would be sold to a third party, a Washington corporation. The transaction between defendant and the third party closed on August 2.

Plaintiffs then brought this action for damages for breach of contract.[3] They alleged that, by selling the property to the third party, defendant breached an oral agreement between plaintiffs and defendant, made on July 11 and 12, to extend the closing date for a sixth time. Defendant moved *in limine* to prohibit plaintiffs from introducing evidence of the asserted oral sixth extension on the ground that such evidence would constitute an attempt to vary the terms of the quitclaim deeds, in violation of the parol evidence rule. The trial court denied that motion and allowed plaintiffs to introduce the evidence. Defendant moved to dismiss at the end of

---

[3] Plaintiffs' complaint also included a claim for specific performance, which plaintiffs dismissed voluntarily before trial.

plaintiff's case-in-chief and moved for a directed verdict at the close of all evidence on the ground, *inter alia*, that plaintiffs violated the parol evidence rule by introducing evidence of the asserted oral sixth extension and that, in the absence of such evidence, plaintiffs had no case to submit to the jury. The trial court denied both motions. The jury returned a verdict for plaintiffs and awarded plaintiffs $4,650,000 in damages.

Defendant appealed, arguing that the trial court erred by admitting evidence of the asserted oral sixth extension of the parties' property purchase agreement, in violation of the parol evidence rule.[4] The Court of Appeals affirmed, holding as pertinent to our review:

> "Defendant's parol evidence argument with respect to the quitclaim deeds is that such evidence may not be admitted to prove that the parties agreed to 'vary' the terms of those deeds. The problem with defendant's argument is that it assumes that the deeds are unambiguous and that the only possible reading of them is that plaintiffs surrendered all of their interest in the contract and the property. However, the deeds are also susceptible to the interpretation that they served the limited function of clearing defendant's title of the cloud of the recorded memorandum. Under the latter reading, the deeds could have served the purpose of facilitating financing or other purposes that are completely consistent with the extension of the contract and with plaintiffs' continued interest. Accordingly, evidence of the oral extension was admissible to resolve the ambiguity in the deeds. *Bonded Credit Co. v. Hendrix*, 282 Or 35, 39, 576 P2d 795 (1978)." *Abercrombie v. Hayden Corp.*, 122 Or App 355, 358, 858 P2d 152 (1993).

We allowed defendant's petition for review, limited to the issue of whether admission of evidence of the asserted oral sixth extension violated the parol evidence rule.[5] We hold

---

[4] Defendant also argued that the trial court erred in allowing the jury to determine whether the payment of the earnest money and the recording of the quitclaim deeds constituted consideration for the asserted oral sixth extension, that the trial court erred in giving a jury instruction relating to promissory estoppel and in refusing to give defendant's requested jury instructions relating to equitable estoppel, that the trial court erred by admitting into evidence under OEC 804 deposition testimony taken from a witness in another proceeding, and that the trial court erred in admitting certain other evidence. We did not allow review of those issues.

[5] Our order allowing review provided: "It is ordered that appellant's petition for review is allowed. Review is limited to issue 'B' of the petition for review, *the Parol Evidence Rule*." (Emphasis added.)

that it did. We reverse the decision of the Court of Appeals and the judgment of the trial court.

Defendant argues that parol evidence was inadmissible to contradict or vary the terms of the quitclaim deeds and that evidence of the asserted oral sixth extension to close under the purchase agreement contradicted the quitclaim deeds because, once delivered, the deeds disclaimed whatever interests plaintiffs had in the property under the purchase agreement.[6]

Plaintiffs maintain, on the other hand, that evidence of the asserted oral sixth extension did not contradict the deeds, because the deeds served only to remove any cloud from defendant's title caused by the recorded memorandum of the purchase agreement and were not intended to extinguish plaintiffs' contract rights under the purchase agreement. Thus, plaintiffs argue, the parol evidence rule did not prevent them from introducing evidence of the asserted oral sixth extension.

The parol evidence rule is defined in ORS 41.740:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity

---

[6] In its briefs in the Court of Appeals and in this court, defendant invokes two seemingly separate doctrines, the parol evidence rule and merger by deed, to argue that evidence of the sixth extension was inadmissible. For example, defendant argued in its appellant's brief that, "[b]y offering parol evidence of an oral extension of the Agreement, plaintiffs contradicted * * * the deeds themselves," thus invoking the parol evidence rule. It also argued in the same brief that "any pre-existing oral agreement made during the conversations of July 11 and 12 that [plaintiffs] retained rights under the Purchase Agreement, merged into the deed[s] recorded and delivered on July 13 pursuant to plaintiffs' instructions," thus invoking the rule of merger by deed.

In *Soursby v. Hawkins*, 307 Or 79, 83 n 5, 763 P2d 725 (1988), this court noted the close relationship between the two doctrines, but declined to sort out the differences between them, because neither party there raised a parol evidence issue. The *Soursby* court went on to dispose of the case solely on the basis of merger by deed. Here, defendant did not raise in the trial court the issue of merger by deed. Therefore, defendant did not preserve for purposes of appeal or review any claim of error relating to this doctrine. We do not, therefore, address the issue of merger by deed and its relationship to the parol evidence rule.

of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."[7]

This court has recognized that a literal reading of ORS 41.740 would "exclude *any* parol evidence of the terms of an agreement once that agreement has been reduced to writing by the parties." *Hatley v. Stafford*, 284 Or 523, 526 n 1, 588 P2d 603 (1978). However, this court also has recognized that it has "never read the statute in such a manner, but instead has treated the statute as a codification of the common law parol evidence rule." *Id.*

■ In addition, despite its name, the parol evidence rule is a substantive rule, not a rule of evidence. *Farley v. United Pacific Ins.*, 269 Or 549, 561, 525 P2d 1003 (1974). It is not a rule of evidence for the reason that "[i]t does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved." 9 Wigmore, Evidence § 2400 (Chadbourn rev 1981). It is a substantive rule, because "it declare[s] that certain kinds of fact are legally ineffective in the substantive law." *Id.* This court has recognized that the reason for the rule is to promote commercial certainty between contracting parties. *Hatley v. Stafford, supra*, 284 Or at 530.

■ The parol evidence rule, in brief, provides that a binding, completely integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement. Restatement (Second) of Contracts § 213(2) (1979). The rule also provides that a binding, partially integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the partially integrated agreement, to the extent that

---

[7] ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

the prior agreements are inconsistent with the partially integrated agreement.[8] Restatement (Second) of Contracts § 213(1) (1979). The issue in this case is whether, under the parol evidence rule, the quitclaim deeds supersede or discharge the asserted oral sixth extension, so that evidence of that extension was inadmissible at trial.

Quitclaim deeds, such as the ones in this case, are within the scope of the parol evidence rule. The parol evidence rule excludes evidence extrinsic to an agreement only if the agreement has been reduced to writing, ORS 41.740; *Hatley v. Stafford, supra*, 284 Or at 526-27. Agreements that have been reduced to writing include deeds. ORS 41.740. In addition, the parol evidence rule excludes evidence extrinsic to an agreement only if the agreement is binding between the parties. Calamari & Perillo, Contracts § 3-2 (3d ed 1989). As a matter of property law, deeds are valid and binding upon, among other things, delivery. *Hanns v. Hanns*, 264 Or 282, 295, 424 P2d 894 (1967). Here, plaintiffs delivered the deeds to defendant when plaintiffs notified the escrow agent on July 12, 1990, that they "acquiesced" in the recording of the deeds. *See Reed v. Reed*, 261 Or 281, 283, 493 P2d 728 (1972) ("[d]elivery is effected by a mental process, not a physical process"). The deeds, therefore, became binding and valid on July 12, 1990.

The parol evidence rule does not prohibit the introduction of evidence extrinsic to a writing when the writing is not an integrated agreement. *Land Reclamation v. Riverside Corp.*, 261 Or 180, 183, 492 P2d 263 (1972). Our next inquiry, therefore, is whether the writings — the quitclaim deeds — were intended to be integrated agreements. An integrated agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement. Restatement (Second) of Contracts § 209 (1979); 2 Farnsworth, Farnsworth on Contracts § 7.3 (1990); Calamari & Perillo, *supra*, § 3-3; *see Hatley v. Stafford, supra*, 284 Or at 527 ("[t]he fact that a writing exists does not bring the rule

---

[8] There are some exceptions to the parol evidence rule. For instance, ORS 41.740 provides that the parol evidence rule does not apply "where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute" and "does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates * * * or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud."

into play if the parties do not intend the writing to embody their final agreement"). Whether parties to a writing intended it to be an integrated agreement is a question of fact for the court. *Land Reclamation v. Riverside Corp., supra*, 261 Or at 183 (citing cases); *accord* Restatement (Second) of Contracts § 209, *comment c* (1979) (stating proposition). In answering that question, the court may consider all relevant evidence, including parol evidence. *Nat. Cash Reg. Co. v. I.M.C., Inc.*, 260 Or 504, 508-09, 491 P2d 211 (1971). If the court is satisfied that the writing is not integrated − that is, not a final expression of some or all of the terms of the agreement − evidence extrinsic to the writing is admissible.

In this case, the parties do not dispute that the quitclaim deeds are final as to their terms. They disagree only about the meaning of those terms. In short, the parties do not dispute that the quitclaim deeds are integrated agreements. As a result, the trial court could not have admitted evidence of the asserted oral sixth extension on the ground that the deeds are unintegrated.

■ ■ Having determined that the quitclaim deeds were intended to be integrations, we next must determine whether those writings are complete or partial integrations. Calamari & Perillo, *supra*, § 3-4; *see Hatley v. Stafford, supra*, 284 Or at 531-35 (an integrated writing may be either completely integrated or partially integrated). A completely integrated writing is one that the parties intended to be the final *and* exclusive expression of their agreement. Restatement (Second) of Contracts § 210 (1979); 2 Farnsworth, *supra*, § 7.3; Calamari & Perillo, *supra*, § 3-4. A partially integrated writing is one that the parties intended to be a final expression as to the terms in the writing, but *not* as to all the terms of their agreement. Restatement (Second) of Contracts § 210 (1979); Calamari & Perillo, *supra*, § 3-4.

■ A completely integrated writing may not be contradicted or supplemented by prior terms. Calamari & Perillo, *supra*, § 3-4. Stated more specifically, if the writing is a complete integration, parol evidence of prior agreements within the scope of the complete integration is inadmissible, whether or not that evidence is consistent with the complete integration. *See Hatley v. Stafford, supra*, 284 Or at 535

(implying same point); *accord* Restatement (Second) of Contracts § 213(2) (1979) (stating proposition). A completely integrated writing supersedes or discharges all prior agreements, written or oral, within the scope of the complete integration.

A partial integration may not be contradicted, but it may be supplemented by evidence of prior consistent, additional terms. *Hatley v. Stafford, supra,* 284 Or at 535; Calamari & Perillo, *supra,* § 3-4; *accord* Restatement (Second) of Contracts § 216(1) (1979) (stating proposition). A partially integrated writing supersedes or discharges all prior agreements, written or oral, to the extent that the prior agreements are inconsistent with the partial integration.

Whether an integrated writing is partially or completely integrated is a question for the trial court. *Hatley v. Stafford, supra,* 284 Or at 532. An integrated writing is partially integrated if the writing omits a consistent, additional agreed-upon term, which was (1) agreed to by the parties for separate consideration, or (2) such a term as in the circumstances might naturally be omitted from the writing. *Id.* at 533 (adopting Restatement of Contracts § 240 (1932)); *accord* Restatement (Second) of Contracts § 216 (1979). Otherwise, the integrated writing is completely integrated. The trial court may consider all relevant evidence, including evidence extrinsic to the writing in question, to determine whether the parties intended the integrated writing to be a complete or partial integration. *See Hatley v. Stafford, supra,* 284 Or at 534 ("the surrounding circumstances, as well as the written contract, may be considered").

In this case, the parties disagree over whether evidence of the asserted oral sixth extension is inconsistent with the terms of the quitclaim deeds. A prior agreement is "inconsistent" with the terms of an integrated writing if it contradicts or negates an express term in the writing. *Id.* at 533-34. The granting clauses in the quitclaim deeds provide that plaintiffs "*release[]*" and "*quitclaim[]*" to defendant the real property at issue in this case. (Emphasis added.) The quitclaim deeds also provide that they are "recorded for the purpose of clearing from title all of" plaintiffs' "right, title and interest" to the property arising from the recorded memorandum of the purchase agreement. Plaintiffs rely on

those latter "purpose" provisions to argue that the quitclaim deeds were intended not to extinguish plaintiffs' interest in the property under the purchase agreement, but only to remove whatever protection they had under the recording statutes against subsequent *bona fide* purchasers of the property, ORS 93.600 to 93.806. Thus, plaintiffs argue, evidence of the asserted oral sixth extension does not contradict the quitclaim deeds. We are not persuaded.

First, plaintiffs must contend with the deeds' granting clauses, in which they expressly released and quitclaimed the property to defendant. Plaintiffs argue here that the granting clauses released and quitclaimed only their "interest" in the recording statutes' protection. Plaintiffs rely on *Security Bank v. Chiapuzio*, 304 Or 438, 747 P2d 335 (1987), for the proposition that an interest in a contract for the sale of land can be severed from an "interest" in the recording statutes' protection. Plaintiffs' reliance on *Security Bank* is misplaced.

At issue in *Security Bank* was whether a security interest in a land sale contract, as distinct from a security interest in the land itself, was subject to Article 9 of the Uniform Commercial Code, ORS 79.1010 to 79.8010. *Security Bank v. Chiapuzio, supra*, 394 Or at 440. This court held that an interest in a land sale contract and an interest in the land itself are separable interests, *id.* at 444, and that, although Article 9 does not govern a security interest in the land, *id.* at 442-43, it does govern a security interest in a land sale contract, *id.* at 452. This court did not hold that an interest in a land sale contract is separable from an "interest" in the protection of the recording statutes. Indeed, plaintiffs point to no authority that would support the proposition that there is such a thing as an "interest" in the protection of recording statutes. The quitclaim deeds in this case released and quitclaimed *the only interest or claim that plaintiffs had in the real property*: their right to buy under the property purchase agreement.[9]

---

[9] At oral argument before this court, the parties debated whether the quitclaim deeds here were "common form" quitclaim deeds subject to ORS 93.110. ORS 93.110 provides that "[a] deed of quitclaim, in the form in common use, is sufficient to pass *all* the estate which the grantor could lawfully convey by a deed of bargain and sale." (Emphasis added.) "Bargain and sale" deeds "convey the *entire* interest in the described property at the date of the deed which the deed purports to convey." ORS

Second, the quitclaim deeds' "purpose" clauses express only the parties' intent in *recording* the quitclaim deeds, *i.e.*, to "clear[] from title all of [plaintiffs'] right, title, and interest to the property" arising from the property purchase agreement. It was not the function of those clauses to define the interest quitclaimed by the deeds, and they did not purport to do so.

The quitclaim deeds unconditionally released and quitclaimed to defendant plaintiffs' only interest in the property: their right to buy under the parties' purchase agreement. It follows, therefore, that evidence of the asserted oral sixth extension, evidence that would have the effect of preserving plaintiffs' right to purchase the property, is inconsistent with the terms of the quitclaim deeds. As a result, we need not decide whether the deeds are complete or partial integrations. Because the quitclaim deeds are integrated writings, they may not be contradicted by evidence of the asserted prior oral sixth extension, regardless of whether they are partial or complete integrations, unless some exception to the parol evidence rule applies.[10]

The Court of Appeals held that the quitclaim deeds are ambiguous and that evidence of the asserted oral sixth extension was admissible to resolve the ambiguity. *Abercrombie v. Hayden Corp., supra*, 122 Or App at 358. The parol evidence rule does not prohibit a party from introducing evidence extrinsic to a writing to explain an ambiguity in the writing, even when the writing is a completely integrated agreement. *See* ORS 41.740 ("this section does not exclude other evidence * * * to explain an ambiguity"); *Contract Co. v. Bridge Co.*, 29 Or 549, 553, 46 P 138 (1896) (suggesting exception); *accord* Restatement (Second) of Contracts §

---

93.860(2)(a) (emphasis added). Because we interpret the deeds in this case effectively to release plaintiffs' rights under the purchase agreement, *i.e.*, whatever title, interest, or claim that plaintiffs may have had in the real property at issue in this case, we do not reach the question of what constitutes a "common form" quitclaim deed.

[10] The asserted oral sixth extension is prior to the quitclaim deeds because, as plaintiffs alleged in their complaint, the parties agreed to that extension on July 11 and 12, 1990. That was before or at the same time that the quitclaim deeds became legally operative as a matter of property law — July 12, 1990, when plaintiffs delivered the deeds to defendant. *See Hanns v. Hanns*, 246 Or 282, 295, 424 P2d 894 (1967) (a deed, to be valid, must be delivered).

214(c) (1979) (parol evidence admissible to establish the "meaning of the writing, whether or not integrated").[11]

 Whether the terms of an agreement are ambiguous is in the first instance a question of law for the trial court. *Evenson Masonry, Inc. v. Eldred*, 273 Or 770, 772, 543 P2d 663 (1975). The trial court may consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous. ORS 42.220. If the trial court concludes that the terms are ambiguous, it is for the jury to resolve the ambiguity. *Evenson Masonry, Inc. v. Eldred, supra.* Parol and other extrinsic evidence may be admitted to aid the jury in interpreting the ambiguous terms. *Libby Creek Logging, Inc. v. Johnson*, 225 Or 336, 339, 358 P2d 491 (1960).

 We are not persuaded that the terms of the deeds are ambiguous. The quitclaim deeds' granting clauses unconditionally and unambiguously released and quitclaimed to defendant the only interest that plaintiffs had in the property: their right to buy under the parties' purchase agreement.

 For the foregoing reasons, we hold that the quitclaim deeds are unambiguous, integrated writings that cannot be contradicted by evidence of the asserted oral sixth extension. Therefore, the trial court erred in admitting evidence of the asserted oral sixth extension, and the Court of Appeals erred in affirming the judgment of the trial court on the basis that the deeds were ambiguous.[12]

---

[11] The only exception asserted in this case is the ambiguity exception.

[12] Plaintiffs suggested at oral argument that, even if the parol evidence rule applies, *evidence of the asserted oral sixth extension, as allegedly reflected in conversations between the parties after* plaintiffs delivered the deeds, was admissible. This is incorrect. The parol evidence rule, when applicable, excludes agreements reached *before* a writing, *Hatley v. Stafford*, 284 Or 523, 526, 531, 588 P2d 603 (1978) (quoting 3A Corbin on Contacts 371-72, § 574 (1960)), but not those reached *after*, Calamari & Perillo, Contracts § 3-2 (3d ed 1989). However, because we hold that the quitclaim deeds are unambiguous, evidence of the asserted oral sixth extension, as allegedly reflected in conversations between the parties *after* plaintiffs delivered the deeds, is still inadmissible insofar as plaintiffs may have sought to introduce them to the jury to explain an alleged ambiguity in the deeds. In addition, plaintiffs did not argue before the trial court or on appeal that conversations between the parties that took place after plaintiffs "acquiesced" to the recording of the quitclaim deeds established a new contract to purchase the real property. Hence, the trial court could not have admitted evidence of the asserted oral sixth extension, as

The decision of the Court of Appeals and the judgment of the circuit court are reversed.

---

allegedly reflected in those conversations, on the basis of a new-contract theory.