Argued and submitted April 21, 1995, affirmed October 16, petition for review denied December 24, 1996 (324 Or 488)

STATE OF OREGON
for the use and benefit of
Richard L. Cipriano,
dba Rich & Assoc. Construction Co.,
*Plaintiff,*

*v.*

TRIAD MECHANICAL, INC.,
an Oregon corporation,
*Appellant,*

*and*

RELIANCE INSURANCE COMPANY,
a Pennsylvania corporation,
*Defendant,*

*and*

STATE OF OREGON,
by and through its
Department of Fish and Wildlife,
*Respondent.*

TRIAD MECHANICAL, INC.,
an Oregon corporation,
*Appellant,*

*v.*

STATE OF OREGON,
by and through its
Department of Fish and Wildlife,
*Respondent.*

(9306-04234; CA A84922)

925 P2d 918

Armstrong, J., filed dissenting opinion.

Rodney R. Mills argued the cause for appellant. With him on the briefs was Seifer, Yeats & Mills.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Armstrong, J., dissenting.

## WARREN, P. J.

Triad Mechanical, Inc., appeals from a judgment dismissing its breach of contract and *quantum meruit* claims against the Oregon Department of Fish and Wildlife (ODFW). Before trial, the court granted ODFW's motion under the parol evidence rule to exclude evidence of anything intended to contradict the terms of a written contract and change orders signed by ODFW and Triad. The trial court also ruled that two change orders constituted an accord and satisfaction between ODFW and Triad. Those rulings effectively precluded Triad from presenting evidence to support its claims. The court then granted ODFW's motion to dismiss Triad's claims and entered a judgment under ORCP 67 B. We affirm.

Triad contends that the trial court erred in the following three particulars: (1) in holding that the parol evidence rule barred evidence of discussions that the parties allegedly had before signing the two written change orders; (2) in holding that the change orders constituted an accord and satisfaction; and, (3) in granting ODFW's motion to dismiss.[1] We affirm.

Triad and ODFW entered into a written contract to construct improvements to the Oak Springs Fish Hatchery. The contract required Triad to complete the improvements in 335 days. Rich & Associates Construction Company, a subcontractor to Triad, agreed to perform a portion of the project involving rock excavation.

The contract between Triad and ODFW specified that 100 cubic yards of rock were to be excavated and provided that any rock excavation in excess of 100 cubic yards would be a change to the contract. The contract gave Triad a claims procedure to pursue equitable adjustments to the contract for changed conditions. As relevant, Article 27 of the contract provides that ODFW's engineer would

"promptly investigate the conditions, and if he finds that such conditions do so materially differ [from those specified

---

[1] Triad does not make any argument concerning its *quantum meruit* claim and we do not address it.

in the contract] and cause an increase or decrease in the cost of, or the time required for, performance of this Contract, an equitable adjustment shall be made and the Contract modified in writing accordingly. * * * Adjustment for such conditions shall be made in accordance with Article 28 of [the Contract]."

Article 28 provides, in turn, that equitable

"[a]djustments for changes or changed conditions covered in Article 26 and 27 will be made on the basis of agreement of the parties: *Provided*, that if the parties fail to agree on the amount of an increase in the cost of performance of the Contract, the adjustment shall be on the basis of force account * * *." (Emphasis in original.)

In mid-March 1992, Rich encountered rock in excess of 100 cubic yards. On March 25, 1992, representatives of Triad, Rich and ODFW met to discuss changes to the contract required by the excess rock.

The parties disagree as to the result of the meeting. According to Triad, the parties agreed that ODFW would pay Triad a fixed unit price, ranging from $7 to $226.26 per cubic yard, for the direct cost of removing the additional rock, depending on the type and depth of the rock to be excavated. Triad asserts that the parties decided to postpone consideration of additional compensation for time and expense resulting from the extra excavation work because the total amount of those costs could not be determined at the time of the meeting.[2] Triad asserts that the parties understood that those costs would be pursued as a separate claim on completion of the project. ODFW contends that all the terms of the parties' agreement with respect to the extra rock excavation are contained in two written change orders, which ODFW prepared, signed and sent to Triad for its signature in June and August 1992. Thus, ODFW maintains that the evidence supporting Triad's assertions constitutes evidence of an oral agreement, proof of which is barred by the parol evidence rule because the change orders constitute either a completely or partially integrated agreement.

---

[2] In its brief, Triad characterized these costs as "delay and impact" costs.

The written change orders, numbered 4 and 6, specified the costs per cubic yard for the additional rock excavation.[3] In addition, each stated that "the completion time [for the project] will not increase and [will] remain at 335 days as a result of this change order." There is no mention in the change orders of an agreement that another claim would be submitted for the delay and impact costs associated with the extra excavation or, put another way, that the change orders reflect only the parties' agreement regarding the direct costs of the extra rock removal. Upon receipt, Triad promptly signed and returned the change orders to ODFW.

Triad completed the project on January 5, 1993, 52 days after the completion date specified in the contract of November 15, 1992. On January 7, 1993, it presented a claim to ODFW for the delay and impact costs associated with excavating the extra rock. ODFW refused to pay the claim, asserting, *inter alia,* that Triad had waived further claims for costs incurred as a result of the extra rock excavation when it signed change orders 4 and 6. Rich thereafter filed an action against Triad and ODFW on the subcontract between Rich and Triad. Triad, in turn, filed cross-claims against ODFW for breach of contract, seeking to recover the delay and impact costs allegedly incurred by Triad as a result of the additional excavation.

Before trial, ODFW filed a motion, based on the parol evidence rule, "for a ruling precluding [Triad and Rich] from entering any evidence or making reference in the presence of the jury to anything intended to contradict the terms of the written contract and change orders." That motion sought to exclude evidence of the discussion that Triad alleges the parties had at their March 25 meeting.

---

[3] Change order 4 stated a rock excavation cost of $700 per cubic yard for a portion of the excavation, which was a typographical error by ODFW. It also provided a list of estimated quantities of rock to be removed under the terms of the change order, according to the rock type and depth. Change order 6 changed the $700 unit price to $7 per cubic yard and adjusted the estimated rock quantities to reflect the final quantities of rock that were actually removed. Because the actual quantity of rock removed was more than what the parties originally estimated in change order 4, change order 6 also provided for a 32.4 percent increase in the cost of the additional excavation work.

After reviewing the change orders, the trial court granted ODFW's motion to limit evidence. The trial court also ruled that change orders 4 and 6 constituted an accord and satisfaction between the parties. Triad told the court that those rulings effectively precluded it from presenting evidence necessary to prove its claims. Triad then sought to introduce evidence of the facts surrounding the March 25 meeting to show that the change orders did not encompass all of the terms that the parties had agreed upon.

After the offer of proof, ODFW moved to dismiss Triad's claims and, in the alternative, for summary judgment.[4] The trial court granted ODFW's motion and entered judgment under ORCP 67 B dismissing Triad's cross-claims against ODFW for breach of contract on the ground that there was no genuine issue as to any material fact and that ODFW was entitled to judgment in its favor as a matter of law.[5]

■■ Triad first assigns error to the trial court's grant of ODFW's motion to limit evidence under the parol evidence rule.[6] The parol evidence rule is found in ORS 41.740, which provides, as relevant:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest,

---

[4] ODFW had previously moved for summary judgment on Triad's breach of contract claim on the ground that ODFW had complied with the equitable adjustment procedures specified under the contract. That motion was denied and that denial is not at issue on appeal.

[5] The judgment also dismissed ODFW's first counterclaim against Triad for liquidated damages and awarded ODFW costs and disbursements against Triad. Rich's claim against Triad based on the additional rock excavation was abated pending the conclusion of this appeal.

[6] We do not address Triad's assignment that the trial court erred by ruling that the change orders constituted an accord and satisfaction. That does not raise a new or different issue from the one we resolve here. Triad's claim is for breach of contract and our ultimate inquiry goes to the scope of the parties' agreement: whether the evidence of an alleged oral agreement is properly admissible to vary or supplement the terms of the parties' written agreement. An accord and satisfaction is a type of executed, substituted contract. *Lenchitsky v. H.J. Sandberg Co.*, 217 Or 483, 490, 343 P2d 523 (1959). To determine whether the agreement should be characterized as an accord and satisfaction does not help us to resolve the question regarding the scope of the parties' agreement.

no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud."

The Oregon Supreme Court "has recognized that a literal reading of ORS 41.740 would 'exclude *any* parol evidence of the terms of an agreement once that agreement has been reduced to writing by the parties.'" *Abercrombie v. Hayden Corp.*, 320 Or 279, 286, 883 P2d 845 (1994) (quoting *Hatley v. Stafford*, 284 Or 523, 526 n 1, 588 P2d 603 (1978)). The court does not interpret ORS 41.740 as having that effect, however, and, instead, treats it as a codification of the common-law parol evidence rule.[7] The rule is a rule of integration. It prohibits oral evidence of those aspects of the bargain that the parties intended to memorialize in the writing.[8] *Caldwell et ux v. Wells*, 228 Or 389, 395, 365 P2d 505 (1961). If the parties did not intend the writing to represent their entire agreement, the agreement is only partially integrated, and prior consistent additional terms not evidenced by the writing may still form part of the entire agreement. *Siegner v. Interstate Production Credit Assn.*, 109 Or App 417, 425, 820 P2d 20 (1991). An oral agreement is not integrated in a contemporaneous writing if it is not inconsistent with the

---

[7] Despite its name, the parol evidence rule is a substantive rule, not a rule of evidence. It " 'does not exclude certain data because they are * * * untrustworthy or undesirable means of evidencing some fact to be proved[;] * * * [rather,] it declare[s] that certain kinds of fact are legally ineffective in the substantive law.' " *Abercrombie*, 320 Or at 286 (quoting 9 Wigmore, *Evidence* § 2400 (Chadbourn rev 1981)). That follows from the rule's purpose, which is to promote commercial certainty by allowing contracting parties to rely on the final written expression of their agreement as embodying the terms of the agreement. *Id.*; *Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 518-19, 852 P2d 960 (1993), *rev den* 318 Or 459 (1994).

[8] The parol evidence rule, however, does not prohibit a party from introducing evidence extrinsic to a writing to explain an ambiguity in the writing, even if the writing is completely integrated. ORS 41.740 ("this section does not exclude other evidence * * * to explain an ambiguity"); *see Abercrombie*, 320 Or at 291, and cases cited therein. Triad does not argue that the terms of the change orders are ambiguous.

written agreement and is "such an agreement as might naturally be made as a separate agreement by parties situated as were parties to the written contract."[9] *Hatley*, 284 Or at 535.

■■ In analyzing a parol evidence issue, we must determine whether the agreement that the parties have reduced to writing is integrated and, if so, to what extent. ORS 41.740; *Abercrombie*, 320 Or at 287. Although that inquiry presents issues that are both factual and legal, they are issues for the court rather than for the trier of fact. *See Abercrombie*, 320 Or at 287-89.

In this case, the parties agree that the writings, the two change orders, are integrated. Neither party disputes that the change orders bound ODFW to pay set amounts per cubic yard for rock excavation that exceeded the 100 cubic yards specified in the original contract. Therefore, the change orders were the parties' final expression, at least with regard to those terms. *See Abercrombie*, 320 Or at 288 (integration found where parties agreed that writings were final as to their terms but disagreed about the meaning of those terms). The scope of the duties and obligations encompassed by an integrated writing turns on an examination of the parties' intent. A writing is only as complete as the parties intended it to be.

■ With regard to the question of whether the writings are completely or partially integrated, we review the trial court's findings of historical fact for any evidence to support them and its legal conclusions based on those facts for errors of law. *See Wescold*, 120 Or App at 519-20.

At this point, ODFW raises two arguments. First, ODFW argues that Triad's oral evidence is inadmissable under the parol evidence rule, whether the change orders are fully or only partially integrated, because the terms of the alleged oral agreement are "inconsistent" with an express term found in both change orders. *See Abercrombie*, 320 Or at

---

[9] Triad does not contend that the oral agreement was supported by a separate consideration.

288-91 (providing that the court need not address the question of whether an integrated writing is completely or partially integrated after finding that the asserted parol evidence is inconsistent with an express term of the writing). Second, ODFW argues that the change orders are not a partial integration of the parties' agreement, because the alleged oral agreement is so closely connected to the matters actually addressed in the integrated writings that it would not have been natural for the parties to have omitted those terms. We agree with both arguments.

In determining whether the parties intended the integrated writing to be a complete or partial integration, we consider all relevant evidence, including the writings and the surrounding circumstances. *Abercrombie*, 320 Or at 289. Our task is to decide whether the historical facts are susceptible of only one reasonable interpretation. *Wescold*, 120 Or App at 520.

Our inquiry begins with an examination of the writings because the parties' intent often appears from the writings themselves. And, when the writing is complete on its face, we presume that the parties intended the writing to be a complete integration. *Hatley*, 284 Or at 535. On this point, the Supreme Court in *Hatley* explained:

> "[T]he apparent completeness and detail of the writing itself may lead the court to conclude the parties intended the writing to be a complete integration of their agreement.

> "[W]hen the writing is complete on its face, [the court] should admit evidence of consistent additional terms only if there is substantial evidence that the parties did not intend the writing to embody the entire agreement." 284 Or at 535 (citations omitted).

In this light, an integration clause in a writing is an indication that the writing was intended to be a complete integration, but it is not conclusive. *Howell v. Oregonian Publishing Co.*, 82 Or App 241, 245, 728 P2d 106 (1986), *mod* 85 Or App 84, 735 P2d 659, *rev den* 303 Or 699 (1987).

Turning to ODFW's first argument, a prior agreement is "inconsistent" with the terms of an integrated writing if it contradicts or negates an express term in the writing.

*Abercrombie*, 320 Or at 289. In Triad's offer of proof, its project manager testified, in part, that the parties orally agreed, before signing the change orders, that, on completion of the project, Triad would submit a separate claim for the additional time it would take Triad to complete the project due to the extra excavation work. ODFW maintains that that evidence negates the express statement in both change orders providing that "the completion time [for the project] will not increase and [will] remain at 335 days as a result of this change order."

In Triad's offer of proof, its project manager repeatedly testified that Triad did not ask for additional time to complete the project because it could not quantify the extra work, and, thus, it could not determine the impact of the additional work on the project schedule. He testified that ODFW agreed that Triad could submit a claim for extended project costs after the project conclusion, when the exact costs would be known. It follows then, Triad contends, that the language in the change orders means only that the state did not agree, at that time, to extend the project completion date. We are not persuaded. The language in the change orders is unambiguous, and Triad does not argue that there is an ambiguity present. The change orders unconditionally provide that the project completion would not be extended due to the extra excavation work. We conclude, therefore, that evidence of the asserted oral agreement that Triad could extend the project duration specified in the contract and both change orders, and, later, pursue a claim for the costs associated with that additional work, is inconsistent with an express term of the writing. The trial court ruled that there was a complete integration and excluded that evidence.

As we understand it,[10] however, Triad also argues that the parties' oral agreement encompassed a claim for the

---

[10] During its offer of proof, Triad presented evidence of its delay costs. Triad's project manager testified that its claims included costs for additional manpower and lost productivity that it incurred both before and after the specified completion date of November 15, 1992. It is not clear from the record, however, just how much Triad is claiming for the costs that it incurred for the additional 52 days that it took to complete the project. First, Triad submitted a summary of its claims against ODFW: $81,819 for extended project support; $140,430 for productivity loss/impact; and $15,600 for retainage/contract balance. There is no dispute that Triad completed the project 52 days behind schedule. However, Triad calculated its

impact or additional costs associated with the additional work that Triad conducted within the 335 days specified for the completion of the project, and that, therefore, the change orders were only partially integrated. ODFW responds that, even so, the alleged oral terms are encompassed by the change orders.

■■■ To restate the legal standard briefly: we review the question of whether the parties intended that the writing be completely or partially integrated by looking at whether the asserted oral term is such that the parties, under the circumstances, might naturally have omitted it from the writing.[11] *Hatley*, 284 Or at 533. We look first to the writing, however, and presume that it is intended to be a complete integration. *Id.* at 535. Evidence of consistent additional terms is only admitted where there is substantial evidence that the parties did not intend that the writing embody the parties' entire agreement. *Id.*

The change orders, on their face, are complete. There is no mention that the listed costs are limited to the direct costs of the rock removal, nor do they mention that additional claims for the "impact" costs will be submitted later, at the project conclusion, when they will be known. Triad points to the fact that the change orders do not contain integration clauses as evidence that the parties did not intend that the writings embody all of the terms of their agreement. That, however, is not a dispositive indicator of the parties' intent, and, thus, the mere absence of an integration clause is insufficient to rebut the presumption of complete integration. Triad also relies on the testimony of its project manager that he did not intend, by signing the change orders, to resolve anything but the question of the direct costs of the additional excavation. That evidence is also insufficient to rebut the presumption of complete integration. Under the circumstances there are several facts that lead to the conclusion that the

---

"extended project support" costs based on 105 calendar days. Moreover, Triad's letter to ODFW dated June 7, 1993, asserts a claim for $38,827 for the extended project overhead costs Triad incurred during the period between the contract completion date of November 15, 1992, and May 28, 1993, when it fulfilled the project requirements.

[11] Triad does not contend that the oral agreement was supported by a separate consideration.

alleged oral terms were not the type that the parties might naturally have omitted from the change orders. This was a sophisticated business transaction and, when considering the surrounding circumstances, we are aware of the fact that parties with business experience are more likely to reduce their entire agreement to writing than parties without such experience. *Hatley*, 284 Or at 534. That is the case here. Specifically, Article 27 of the contract expressly provides that any modification "in the cost of, or the time required for, performance of [the] Contract" must be in writing. Moreover, Triad's project manager testified that he was familiar with the change order procedure because he had done business with the state in the past. We find nothing in the testimony of Triad's project manager to indicate that he was unaware of the consequences of failing to put the whole agreement in the change orders. Rather, he repeatedly testified that (1) he knew that the additional excavation would require additional time, additional cost, or both; (2) he discussed those requirements with ODFW; (3) he did not ask for additional time to complete the project at the March 25th meeting or at the time he signed either of the two change orders; and, (4) he did not make note of those requirements on the change orders nor did he attempt to clarify that the change orders only covered the direct costs of the additional excavation when he signed them. Under these circumstances, we conclude that the subjects addressed in the alleged oral agreement were within the contemplation of the parties, and, thus, that it would not have been natural for the parties, situated as they were, to have omitted them from the writings. Put another way, the matters of additional time and additional costs are so interrelated and connected to the main purpose of the change orders that it would not have been natural for the parties to have regarded them separately and not include them in the change orders. The writings taken together are completely integrated.

In summary, we hold that the terms of the alleged oral agreement are inconsistent with the integrated writings and, to the extent that Triad asserts a claim for compensation in addition to its claim for additional time, all of the terms that Triad alleges the parties discussed were within the

scope of the writings. Additionally, the alleged oral agreement was so closely connected in subject matter to the agreement that was reduced to writing that it would not be natural, given the provisions of Articles 27 and 28, to fail to address in writing the claims now made. Consequently, we hold that the trial court did not err in granting ODFW's motion under the parol evidence rule. We therefore affirm the judgment in favor of ODFW on Triad's first, second and third cross-claims.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the parol evidence rule bars Triad from seeking to prove its claim for indirect and delay costs for removing rock in excess of the amount specified in the parties' original construction contract. It reaches that conclusion on the ground that the change orders that addressed the *direct* cost of removing that rock would have addressed Triad's right to seek indirect and delay costs for that work if the parties had intended such a right to survive execution of the change orders.

The majority is wrong. Given the terms of the original contract, there was no reason for the parties to believe it necessary to include language in the change orders to preserve Triad's right to seek a further contract adjustment for additional rock removal costs. That right existed in the original contract, so there was no reason to mention it in the change orders. Therefore, the contractual right that Triad seeks to enforce is not one that would naturally have been included in the change orders and, hence, it is not one that the parol evidence rule bars Triad from seeking to prove.

Article 27 of the original contract provides the mechanism by which equitable adjustments to the contract are to be made to address conditions that differ from those specified in the contract. The article provides that the Oregon Department of Fish and Wildlife's engineer will

"promptly investigate the conditions, and if he finds that such conditions do so materially differ [from those specified in the contract] and cause an increase or decrease in the

cost of, or the time required for, performance of this Contract, an equitable adjustment shall be made and the Contract modified in writing accordingly. * * * Adjustments for such conditions shall be made in accordance with Article 28 of [the Contract]."

Article 28 provides, in turn, that equitable

"[a]djustments for changes or changed conditions covered in Article 26 and 27 will be made on the basis of agreement of the parties: *Provided,* that if the parties fail to agree on the amount of an increase in the cost of performance of the Contract, the adjustment shall be on the basis of force account * * *." (Emphasis in original.)

Under those provisions, the parties envisioned that changed conditions would lead to changes in the original contract by negotiated agreement. If the parties failed to reach such an agreement with regard to an increase in the cost of the contract, there was a mechanism to address that failure.

Consistent with those provisions, the parties negotiated an agreement on the increased *direct* cost of removing the additional rock that Triad had encountered. According to Triad's evidence, they postponed trying to reach agreement on all of the consequences of the additional rock excavation, because they could not reasonably determine at that time what they would be. There was no reason to recite that fact in the change orders, however, because the original contract already provided that further adjustments could be made by agreement. In fact, if the parties had intended the change orders *to foreclose* any right of Triad to seek a further adjustment for rock excavation beyond the direct excavation costs stated in the change orders, they would have had to say that in the change orders, because the original contract gives Triad the right to seek such an adjustment.

The change orders confirm that understanding. They simply recite the changes that the parties had agreed to make; they do not state that the parties had agreed that there would be no further changes as a result of the additional rock excavation.

Moreover, contrary to the majority's suggestion, *see* 144 Or App at 115-16, the statement in the change orders

about maintaining the original 335-day contract term supports my interpretation of the change orders. Each change order states that the "completion time will not increase and [will] remain at 335 days as a result of this change order." All that means is that the *change orders* do not change the completion time under the contract, which is to say that the parties have not agreed to change the completion time as a result of the additional rock excavation. Significantly, however, the change orders do not say that the parties have agreed that the *additional rock excavation* will not result in a change in the completion time of the contract. That means that the change orders affect only what they addressed, which is the parties' agreement on the direct cost to remove the additional rock. Any other effect of the additional rock excavation is subject to adjustment under the terms of the original contract.

Of course, the parties never reached an agreement on those effects beyond the agreement embodied in the change orders. The department sought summary judgment below on the ground that the parties' failure to reach agreement on additional costs due Triad for rock excavation precluded recovery of those costs. The trial court denied that motion, however, and the department does not challenge that ruling on appeal. Consequently, we need not decide whether Triad can prevail on its claims in the face of the department's rejection of Triad's effort to obtain a further equitable adjustment for the indirect and delay costs of the additional rock excavation.

Because of its decision on the parol evidence issue, the majority does not reach the alternative ground on which the trial court dismissed Triad's claims, which is that the change orders constitute an accord and satisfaction of the parties' dispute over the additional rock excavation. An accord and satisfaction occurs when a debtor tenders a payment on the condition that the creditor accept it in discharge of an unliquidated debt, and the creditor accepts the payment on that condition. *Fiedler v. Bowler*, 117 Or App 162, 165, 843 P2d 961 (1992).

At the time the parties executed the change orders, there was no disputed claim or unliquidated debt. The contract was executory. The change orders merely addressed

certain terms under which the parties had agreed to continue performance of it. Under those circumstance, the department was not a debtor on an unliquidated debt that the change orders discharged. *See Fiedler*, 117 Or App at 165. Consequently, the change orders cannot constitute an accord and satisfaction.

If the foregoing issues are addressed in the manner that I believe that they should be, it follows that the trial court erred in granting summary judgment to the department on Triad's claims. Therefore, I respectfully dissent from the majority's decision to affirm the dismissal of Triad's claims.