**HALL STREET ASSOCIATES, L.L.C., a Washington limited liability company, Plaintiff,**

**v.**

**MATTEL, INC., a Delaware corporation; et al., Defendants.**

**No. CIV 00–355–JO.**

United States District Court, D. Oregon.

May 21, 2001.

James M. Finn, Debra Maldonado, Schwabe Williamson & Wyatt Portland, OR, for Plaintiff.

Marc D. Blackman, Ransom Blackman, Portland, OR, Peter Hsiao, Laurie D. Zelon, Scott A. McPhee, Siegmund Shyu, Morrison & Foerster, Los Angeles, CA, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT E. JONES, District Judge.

Plaintiff Hall Street Associates ("Hall Street") brings this action against defendants Mattel, Inc. ("Mattel") and its predecessors, seeking an order from this court that Mattel is required to meet its contractual obligations through April 30, 2003. The case was tried to the court on April 27, 2001 and April 30, 2001. Having considered the testimony, documentary evidence, and the arguments of counsel, judgment will be entered for Mattel based upon the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff Hall Street Associates, L.L.C. is the owner of certain property in Washington County, Oregon, located at 8585 S.W. Hall Boulevard, Beaverton, Oregon (the "Premises"). Hall Street's predecessor in interest is Cascade Square Associates.

2. Defendant Mattel is a Delaware corporation doing business in Oregon. Its predecessors in interest are defendant View–Master Ideal Group ("View–Master"), Tyco Industries, Inc. ("Tyco Industries"), Tyco Manufacturing Corporation ("Tyco Manufacturing") and Tyco Toys, Inc. ("Tyco Toys").

3. On March 5, 1991, View–Master entered into a Lease Agreement (the

"Lease") with Cascade Square Associates, pursuant to which Cascade Square Associates agreed to lease the premises to View–Master.

4. The Lease provided that View–Master would lease the premises for commercial purposes for a term of approximately six years.

5. Pursuant to the second paragraph of section 3 of the Lease, the tenant was permitted to terminate its tenancy with one year's notice. Notwithstanding the right to terminate its tenancy, however, the tenant's obligation to "perform its other obligations under the Lease" continued "through May 31, 1997."

6. On April 29, 1996, Cascade Square Associates and View–Master executed an amended lease (the "Amended Lease").

7. Through a series of mergers and assignments among the defendants, Mattel became the tenant in 1997.

8. The Amended Lease specifically amended the Lease in four respects:

    a. Paragraph 1.c. of the Lease was amended, such that the "Lease Expiration Date," identified in the Lease as May 31, 1997, was changed to April 30, 2003.

    b. Paragraph 1.d. was amended to modify Mattel's rental amount, and to specify rental amounts owed through April 30, 2003.

    c. Section 10 of the Lease, entitled "Lien for Rent", was deleted and replaced with a provision entitled "Landlord's Lien." The new provision modified and clarified Hall Street's right to a security interest and lien on property held by Mattel on the Premises in the event that Mattel failed to meet its rent obligations.

    d. Paragraph 34, entitled "Completion of Certain Obligations Prior to Termination," was added. Paragraph 34 provided that Mattel was obligated to complete any and all obligations under paragraphs eight (8) and twelve (12) "not later than nine (9) months prior to the Lease Expiration Date."

9. The Amended Lease provided that "other than as amended as set forth, [the Lease] shall continue to be in full force and effect, and all of the terms and conditions in it shall remain effective and enforceable by and between the parties relative to the Premises".

10. Negotiating the Amended Lease were Robert Hibbs for the Landlord and Dennis Wesolowski and Daniel B. Nottage for the Tenant.

11. The Amended Lease was drafted by Hall Street, and specifically, by Robert Hibbs, an attorney and partner of Cascade Square Associates.

12. While the Amended Lease was being negotiated, Michael Kennedy was senior vice-president, secretary and general counsel of Tyco Toys. Mr. Kennedy reviewed a draft of the Amended Lease and concluded that it permitted Tyco Toys to terminate the Amended Lease each year on May 31, provided that one year's notice had been given. Mr. Kennedy conveyed his understanding of that provision to his immediate superior, the chief financial officer of Tyco Toys.

## CONCLUSIONS OF LAW

Hall Street seeks enforcement of the Amended Lease through May 31, 2003, on a single legal basis.[1] In its post-trial submission to the court, Hall Street explains that "Plaintiff has presented its case as

---

1. Hall Street consistently has refused to advance a "mistake" theory or to seek reformation of the Amended Lease. While I might have been amenable to such a claim, I will not entertain an argument that simply is not before me.

one in which the court has determined that there is an ambiguity and extrinsic evidence is being presented by both parties to explain the ambiguity. The court may declare the intent of the parties, based on such evidence, and the meaning of the 1996 Amendment as it impacts Section 3 of the 1991 Lease, without resorting to reformation theory."

■ In this case, the parties concede that the Amended Lease is a completely integrated agreement. "The parol evidence rule, in brief, provides that a binding, completely integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement". *Abercrombie v. Hayden Corp.*, 320 Or. 279, 286, 883 P.2d 845, 850 (1994). Therefore, "if the writing is a complete integration, parol evidence of prior agreements within the scope of the complete integration is inadmissible, whether or not that evidence is consistent with the complete integration." *Abercrombie*, 320 Or. at 288, 883 P.2d 845 (citing *Hatley v. Stafford*, 284 Or. 523, 535, 588 P.2d 603 (1978)).

■ Notwithstanding the prohibition of parol evidence in such cases, a factfinder may look to extrinsic evidence to explain the meaning of an ambiguous provision. *Abercrombie*, 320 Or. at 292, 883 P.2d 845 (citing *Libby Creek Logging, Inc. v. Johnson*, 225 Or. 336, 339, 358 P.2d 491 (1960)). Relying on this exception, Hall Street has presented extrinsic evidence relating to the parties' understanding of the Amended Lease. According to Hall Street, while the Amended Lease states that Mattel is required to meet its rental and other obligations only through May 31, 1997, the parties understood that Mattel was actually obligated through 2003. Essentially, they ask me to negate the May 31, 1997 contained in paragraph 2 of Section 3 of the Amended Lease, and replace it with the date of April 30, 2003. This I cannot do.

■ While extrinsic evidence is admissible to explain an ambiguity in an agreement, such evidence may not be used to negate an express term of a bargained for, fully integrated agreement. Oregon courts have consistently held that where prior or contemporaneous negotiations or agreements are inconsistent with a term of the written agreement, evidence thereof is inadmissible to negate those inconsistent written terms. *See, e.g., Varner v. Eves*, 164 Or.App. 66, 990 P.2d 357 (Or.Ct.App. 1999); *State of Oregon v. Triad Mechanical, Inc.*, 144 Or.App. 106, 114, 925 P.2d 918, 923 (1996).

Furthermore, in this case, there is evidence that Mattel relied on the Amended Lease in the form that it was actually drafted. Michael Kennedy, who was general counsel and senior vice-president of Tyco Toys at the time the Amended Lease was negotiated and signed, testified at trial that he understood the date of May 31, 1997 to permit Tyco Toys to terminate the Amended Lease prior to the lease expiration date, providing one year's notice had been given. He also testified that he informed his client of his understanding of the Amended Lease. "If the parties ... have assented to the writing as the embodiment of their entire agreement, each should be able to rely on the terms of the writing as conclusive evidence of what they have agreed to". *Hatley v. Stafford*, 284 Or. 523, 531, 588 P.2d 603, 607 (1978).

The cases cited by Hall Street do not warrant the contrary conclusion. In *Abercrombie*, while the court did state that an ambiguous provision could be explained by extrinsic evidence, it also noted that "a completely integrated writing may not be contradicted or supplemented by prior

terms." 320 Or. at 288, 883 P.2d 845. In *Moon v. Moon,* 140 Or.App. 402, 914 P.2d 1133 (1996), a husband and wife negotiated a divorce settlement, pursuant to which the husband was awarded a particular piece of property specifically identified by its address. There was evidence that both parties assumed that the award included the adjacent property, which was not specifically identified anywhere in the settlement. The court concluded that where the agreement awarded the property "located at" the particular location, it included the adjacent land not specifically identified. Thus, unlike here, there was no express term that had to be negated or ignored in order for the court to reach its conclusion.

In this case, I am faced with a lease that was negotiated over a substantial period of time by highly experienced attorneys. Robert Hibbs, who was primarily responsible for negotiating and drafting both the Lease and the Amended Lease on behalf of Hall Street, had 22 years of legal experience. These are sophisticated parties who had the means and the expertise to negotiate a complete agreement, and to expect that they could rely on it. Based on the language of the Amended Lease, and the evidence before me, I will not now upset the agreement that they themselves have executed.

## CONCLUSION

Based on the foregoing, the court concludes that Mattel's notice of termination was valid, and that its obligations to pay rent and other obligations under the Amended Lease cease as of May 31, 2001.