Argued and submitted September 11, 2008, affirmed March 19, petition for review denied July 9, 2009 (346 Or 363)

MORTON & ASSOCIATES, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

McCAIN FOODS USA, INC.,
a corporation,
*Defendant-Respondent,*

*and*

INSTITUTIONAL FOOD SERVICE ASSOCIATES, INC.,
a corporation,
dba Western Foodservice Marketing;
IFSA-Oregon, Inc.,
a corporation,
dba Western Foodservice Marketing;
Foodbroker Customer Service, Inc.,
a corporation,
dba Western Foodservice Marketing;
Lynn Nye, aka Lynn C. Kier, aka Lynn Kier-Nye,
an individual;
Kent L. Pfeifer,
an individual;
Michael Anderson,
an individual
and DOES 1-10,
*Defendants.*

LYNN NYE,
aka Lynn C. Kier, aka Lynn Kier-Nye,
an individual,
*Counterclaim Plaintiff,*

*v.*

MORTON & ASSOCIATES, LLC,
an Oregon limited liability company,
*Counterclaim Defendant.*

Multnomah County Circuit Court
050606342; A135606

204 P3d 167

Thomas M. Christ argued the cause for appellant. With him on the briefs were Cosgrave Vergeer Kester LLP, Gary J. Lekas, and Gary J. Lekas, P.C.

David S. Barritt argued the cause for respondent. With him on the brief were Chapman & Cutler LLP, James N. Westwood, Jeremy D. Sacks, Timothy W. Snider, and Stoel Rives LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals from a judgment in favor of defendant on plaintiff's action for breach of the parties' brokerage agreements. On defendant's summary judgment motion, the trial court ruled that the agreements could be terminated without cause. We review the record in the light most favorable to the nonmoving party, plaintiff, in order to determine whether there are any genuine issues of material fact and whether defendant is entitled to judgment as a matter of law. ORCP 47; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). On appeal, we affirm.

Defendant is a national manufacturer of potato products and other foods. Plaintiff is a long-time food broker operating in the Pacific Northwest and had been employed as an independent contractor and food broker for defendant in the Portland, Seattle, and Spokane markets since 1997. In December 2001, the parties entered into three brokerage agreements giving plaintiff the exclusive territorial selling rights on behalf of defendant for Oregon, Washington, and Alaska.

Each agreement was sent to plaintiff along with a letter that provides:

> "Please find enclosed a detailed Broker Contract to be signed by both parties clarifying all terms and conditions of our agreement, and our current brokerage commission rate schedule.

> "We feel it is urgent that both of our organizations are 'on the same page,' prior to committing to each other, for what we hope is a very long relationship. Therefore, in the following paragraphs, please fin[d] a brief overview of our expectations, as covered during the interview process."

The agreements are identical except that they pertain to different territories. Each agreement also provides that plaintiff will not represent manufacturers or promote products that compete with McCain Foods products. In the event of a violation of that provision, the agreements provide that defendant "reserves the right to cancel this agreement without notice." In addition to specifying the commission exceptions

and the method of payment, the agreements contain a section entitled "Termination of Agreement." It provides as follows:

> "This agreement is to become effective January 1, 2002, and will be on a continuing basis. Termination of this agreement can be made by either party and will become effective thirty (30) days after written notification or cancellation has been made."

Thereafter, the agreements provide: "I/We, by affixing our signatures below do hereby agree to the above terms of this agreement as written." The signatures of plaintiff's owner and two vice presidents of McCain Foods appear in the agreements.

Following notification to plaintiff on November 5, 2004, defendant terminated the brokerage agreements effective December 5, 2004. In 2005, plaintiff filed this action against defendant for breach of contract and breach of the covenant of good faith and fair dealing, together with another claim that is not relevant to this appeal.[1] The second amended complaint alleges that:

> "McCain expressly stated to Morton that the parties were committing to each other for a long relationship and to growing the parties' mutual businesses; the exact duration of the three agreements was not expressed, but it was understood by the parties that the duration would be long lasting for many years' duration; it was also understood that the agreements would not be terminated sooner than a long duration unless there was good cause to do so; the usage in the food brokerage industry is that brokerage agreements have durations of many years and are not sooner terminated except for good cause[.]"

Defendant moved for summary judgment, arguing that, as a matter of law, it was not liable to plaintiff because the agreements unambiguously provide for termination upon 30 days' notice, which it had given to plaintiff. After considering the parties' submissions and arguments, the trial court granted defendant's motion. This appeal followed.

---

[1] Plaintiff also brought a claim for intentional interference with a contract but has abandoned that claim on appeal. ORAP 5.45(1).

On appeal, plaintiff essentially makes two arguments. First, it asserts that a reading of the four corners of the agreements demonstrates the existence of an ambiguity regarding whether good cause is required for termination before the agreements expire by their terms. Plaintiff's arguments implicate the provisions of ORS 41.740 (the parol evidence rule). ORS 41.740 provides as follows:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

It follows, in plaintiff's view, that because the written agreements are ambiguous, extrinsic evidence of the parties' oral bargains is admissible to interpret the terms of the written agreements. Alternatively, plaintiff argues that the written agreements were not intended by the parties to be integrated agreements and that they had an oral agreement regarding termination for cause that does not appear within the terms of the written agreements.

■    We turn first to plaintiff's argument that the agreements are ambiguous regarding whether termination must be for good cause. As noted above, if plaintiff's premise is correct, ORS 41.740 does not operate to exclude extrinsic evidence regarding the parties' intentions. As we summarized in *PGF Care Center, Inc. v. Wolfe*, 208 Or App 145, 151, 144 P3d 983 (2006):

> "Disputes over the meaning of a contract provision may not be disposed of by summary judgment if the provision is ambiguous. *Western Surety Co. v. FDS Diving Construction*, 193 Or App 1, 6, 88 P3d 293 (2004). A contract provision is ambiguous if it is capable of more than one 'sensible and

reasonable interpretation.' *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985). Conversely, it is unambiguous only if 'its meaning is so clear as to preclude doubt by a reasonable person.' *Id.* Whether the terms of a contract are ambiguous is a question of law, *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997), which we answer by considering the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006)."

Plaintiff argues that the words "continuing basis" in the termination provisions of the agreements render the termination clause susceptible to more than one reasonable interpretation. According to plaintiff, because the agreements are of unspecified duration and specify only the manner of termination and not the grounds for termination, the agreements' silence on the subject of grounds for termination and the words "continuing basis" support a plausible interpretation that the agreements are terminable only by agreement of the parties or by the election of one party for good cause.

We are not persuaded by plaintiff's argument. First, the fact that the termination provision is silent on the subject of grounds for termination does not create an ambiguity, particularly when the termination clause is read with the provision in the contract that defendant can cancel the agreement without notice in the event that plaintiff promotes or represents a manufacturer of products that competes with defendant's products. Read together, those provisions evidence intent by the parties that the agreements can be cancelled for a particular cause without notice but otherwise 30 days' notice is required for termination for cause or without cause. *See also* ORS 42.230.[2]

Second, the words "continuing basis" must be read in the context of the termination provision itself. Each agreement provides as follows:

---

[2] ORS 42.230 provides, in part, that "[i]n the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"

"This agreement is to become effective January 1, 2002, and will be on a continuing basis. Termination of this agreement can be made by either party and will become effective thirty (30) days after written notification or cancellation has been made."

"Continuing" as used in the text of the above provision is an adjective modifying the word "basis." In ordinary usage, the word "continuing" means: "1 : CONTINUOUS, CONSTANT 2 : needing no renewal : LASTING, ENDURING ‹a *continuing* contract›." *Webster's Third New Int'l Dictionary* 493 (unabridged ed 2002). As used in the termination provision, the word "continuing" expresses the intention of the parties that the agreements are of an unspecified duration and require no renewal after a specific term expires. It does not follow from the fact that the agreements are intended to exist for an unspecified duration that they are subject to termination only for good cause. Importantly, the word "continuing" does not modify any of the words in the second sentence of the provision that pertain not to the ongoing nature of the agreement but to how termination of the agreement is to occur. Indeed, the second sentence in the provision unambiguously expresses the parties' intention that termination by either party can occur upon 30 days' written notice without any specification that cause for termination is required.

■ ■   Nonetheless, in assessing whether an ambiguity exists in the terms of an agreement, a court may consider extrinsic evidence of the parties' intent that is limited to the circumstances under which the agreement is made. *City of Eugene v. Monaco*, 171 Or App 681, 687, 17 P3d 544 (2000), *rev den*, 332 Or 240 (2001); *see also* ORS 42.220.[3] However, such extrinsic evidence "may only affect the interpretation * * * when there is language in the agreement that is susceptible to being construed to carry out that intent." *Criterion Interests, Inc. v. The Deschutes Club*, 136 Or App 239, 246, 902 P2d 110, *adh'd to on recons*, 137 Or App 312, 903 P2d 421 (1995), *rev den*, 322 Or 489 (1996).

---

[3] ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

In opposition to defendant's motion for summary judgment, plaintiff offered evidence of negotiations that preceded the execution of the agreement, as well as evidence of custom in the food brokerage industry. Plaintiff relies on that extrinsic evidence to show an ambiguity about whether the parties intended that their agreements could be terminated only for good cause. That evidence includes testimony by plaintiff's representatives that the parties mutually understood that, in the absence of performance-based cause to terminate the agreements, the agreements would not be terminated for a long period of time. According to the representatives, their understanding was based on the fact that defendant was looking for a long-term relationship that would require plaintiff to invest substantial resources in order to perform under the agreements, the fact that the parties had discussions about long-term business strategies, and the need for long-term relationships in the food industry between manufacturers and brokers. However, plaintiff offers no extrinsic evidence that the words "continuing basis" in the agreements were ever contemplated to reflect both parties' intention that termination could only be for good cause, nor does plaintiff point to any other language in the agreements that is susceptible to the construction plaintiff urges. Because there is no language in the agreement that can be construed to carry out what plaintiff asserts to be the parties' oral agreement, plaintiff's extrinsic evidence does not evidence an ambiguity in the agreements.

In light of the text and the context of the termination provision in the agreements, and the absence of any extrinsic evidence that demonstrates that the parties intended the words "continuing basis" or any other language in the agreements to reflect an understanding that the agreements could only be terminated for cause, we conclude that the agreements unambiguously provide that they can be terminated for any reason upon 30 days' notice.

■ Alternatively, plaintiff argues that the termination provisions are not integrated provisions—that is, they do not reflect the entire agreement of the parties. Implicit in plaintiff's argument is the assertion that the parties agreed—apart from the terms of the written agreements—that their

relationship could be terminated only upon mutual agreement or for cause. None of the agreements contains an express integration clause as occurs frequently in commercial agreements. Moreover, in *Abercrombie v. Hayden Corporation*, 320 Or 279, 287-88, 883 P2d 845 (1994), the Supreme Court explained,

"The parol evidence rule does not prohibit the introduction of evidence extrinsic to a writing when the writing is not an integrated agreement. * * * An integrated agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement. * * * Whether parties to a writing intend it to be an integrated agreement is a question of fact for the court. * * * In answering that question, the court may consider all relevant evidence, including parol evidence. * * * If the court is satisfied that the writing is not integrated—that is, not a final expression of some or all of the terms of the agreement—extrinsic evidence to the writing is admissible."

Plaintiff argues that the declarations of its owners and managers submitted as part of the summary judgment record create issues of fact about whether the parties' agreements were integrated, thereby precluding summary judgment. The following quotation is representative of the averments upon which plaintiff relies:

"I was involved in negotiating the McCain agreements for Morton to be the McCain broker for all of Oregon, Washington and Alaska. McCain and Morton understood that the writings entitled 'Broker Representation Agreement' (hereinafter, 'the Writings') contained only part of the whole agreements between Morton and McCain; for example, the Writings do not identify or describe the extensive services that Morton was to provide, including but not limited to training Morton sales representatives on handling McCain products; receiving, processing and confirming customer's orders; providing product demonstrations to potential customers; planning and carrying out representation of McCain products at various trade shows; and preparing events to showcase McCain products. Nor do the writings describe the many obligations of McCain including, but not limited to, providing food products for Morton to sell; delivering products to buyers; providing samples of McCain food products for use by Morton, providing Morton with sales

and merchandising materials and information; training Morton sales personnel on McCain products; funding advertising and promotion of McCain products; and providing bid pricing for various institutional buyers."

Plaintiff also avers through its representatives,

"As part of the whole agreements, whether written or oral, there was an understanding between Morton and McCain that in the absence of performance based good cause there would be no termination of the parties' agreements, as described in the Writings, until the agreements had been in effect for a long period."

In determining whether the agreements are integrated, we have considered all the evidence presented by plaintiff as well as the terms of the agreements themselves. The language in the provisions of the agreement is evidence that the agreements are integrated. The subjects of termination and duration are entirely covered by the provision in the written agreements. Labeled "Termination of Agreement," the provision provides a fixed date for the commencement of the agreements, an indefinite term of duration, who could terminate the agreement, and the method of termination. Moreover, there is no language in the agreements or in defendant's letter accompanying the agreements that suggests that the provision was not intended to memorialize the parties' entire bargain as to commencement, duration, and termination.

Plaintiff argues, however, that because the termination provision on its face addresses only the manner of how termination is to occur, it is inferable that the parties had a discrete agreement not covered by the written agreements that the written agreements were terminable only for cause. But the missing details relied on by plaintiff in its declarations do not pertain to the subject matter of termination for cause. Additionally, plaintiff's representatives testified that "there was an understanding between Morton and McCain that in the absence of performance based good cause there would be no termination of the parties' agreements, as described in the Writings, until the agreements had been in effect for a long period." In other words, the implication from plaintiff's declarations in that respect is that the parties

orally agreed separately that, initially, termination could occur only for cause but, after a "long period" of time, termination could occur at the will of either party. Plaintiff's alternative argument also implicates the provisions of ORS 41.740.

ORS 41.740 is a codification of the common-law parol evidence rule that declares that certain kinds of facts are legally ineffective in the substantive law in order to promote commercial certainty between contracting parties. *Abercrombie*, 320 Or at 286. The effect of the statute is to prohibit oral evidence of those aspects of the bargain that the parties intended to memorialize in written form and, in that sense, the statute constitutes a rule concerning integration. *Caldwell v. Wells*, 228 Or 389, 395, 365 P2d 505 (1961). If the parties did not intend the writing to represent their entire agreement, as plaintiff argues here, the agreement is only partially integrated, and prior consistent additional terms orally agreed upon may still form part of the entire agreement. *State v. Triad Mechanical, Inc.*, 144 Or App 106, 113, 925 P2d 918, *rev den*, 324 Or 488 (1996). In determining whether the parties intended the brokerage agreements to be completely or partially integrated, we consider all relevant evidence, including the agreements themselves and the surrounding circumstances. *Abercrombie*, 320 Or at 289.

> "An integrated writing is partially integrated if the writing omits a consistent, additional agreed-upon term, which was (1) agreed to by the parties for separate consideration, or (2) such a term as in the circumstances might naturally be omitted from the writing. * * * Otherwise, the integrated writing is completely integrated."

*Id.*

In this case, plaintiff's argument based on its averments that there would be no termination of the agreements in the absence of good cause until the agreements had been in effect for a long time period is in substance an argument that the parties had a separate oral agreement regarding termination for cause that pertained to the initial time period for which the brokerage agreements were in effect. The alleged oral agreement could be said to be inconsistent with the termination provision in the brokerage agreements in that the

oral agreement inserts into the written provision a "termination for cause only" limitation on the right of either party to terminate upon 30 days' notice when no such limitation appears in the written agreements. But even if it could be argued successfully that no inconsistency exists between the alleged oral agreement and the termination provision in the brokerage agreements, plaintiff cannot overcome on this record the remaining hurdles that there must be separate consideration supporting the oral agreement or that the oral agreement is a term that naturally would have been omitted from the brokerage agreements. *See Hatley v. Stafford*, 284 Or 523, 588 P2d 603 (1978); *DeVore v. Weyerhaeuser Co.*, 265 Or 388, 401, 508 P2d 220 (1973), *cert den*, 415 US 913 (1974) (so holding). Plaintiff does not make any claim that there was separate consideration for the oral agreement, and had the parties intended their agreements to be terminable only for cause for a portion of the duration of the agreement, it would have been natural for them to have included that provision as part of their written agreement on termination.

Consequently, we conclude for the reasons stated above that the brokerage agreements are completely integrated. Plaintiff's claims of breach of contract and of a good faith covenant depend on its construction of the termination clause in the brokerage agreements and the extrinsic evidence it offered. For the above reasons, the trial court correctly disregarded plaintiff's evidence of a separate oral agreement that would have prevented the parties from terminating their agreements except for cause. The trial court did not err in granting summary judgment to defendant.

Affirmed.