Argued and submitted September 21, 2015, affirmed March 1, 2017

### HEATHMAN HOTEL PORTLAND, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

### McCORMICK & SCHMICK RESTAURANT CORP.,
a Delaware corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
140404587; A157710

391 P3d 892

Kevin H. Kono argued the cause for appellant. With him on the briefs were Nicholas A. Kampers and Davis Wright Tremaine LLP.

Robyn Ridler Aoyagi argued the cause for respondent. With her on the brief were Edwin C. Perry and Tonkon Torp LLP.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**EGAN, J.**

Defendant, McCormick & Schmick Restaurant Corporation, appeals a judgment for plaintiff, Heathman Hotel Portland, LLC, declaring that defendant had no right to exercise its second option to renew the parties' restaurant lease and a supplemental judgment that awarded attorney fees and costs to plaintiff. Defendant assigns error to the trial court's grant of summary judgment to plaintiff based on the court's conclusion that the terms of the lease between the parties were unambiguous. It also assigns error to the court's award of attorney fees and, alternatively, the amount of the award. We affirm.

We review a trial court's grant of summary judgment to determine whether, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. We review for abuse of discretion whether the amount of a trial court's award of attorney fees was reasonable. *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 369, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 383 P3d 409 (2016).

Plaintiff and defendant are parties to a restaurant lease dated September 20, 2000. Under the lease, defendant rented and operated the restaurant in the Heathman Hotel. The initial lease term was 10 years, to end on September 30, 2010. Under Section 2.2 of the lease, defendant had the option to extend the lease for two additional 10-year periods. The following were the terms and conditions of the options in Section 2.2;

> "2.2 <u>Renewal Options</u>. Provided that at the time of the exercise of the Options herein granted * * * there exists no Default under this Lease by Tenant * * * and Tenant shall have achieved the Minimum Total Gross Sales set forth below, Tenant shall have and is hereby granted the option (the 'Option') to extend the Term for two (2) additional periods of ten (10) years (each an 'Option Term' and collectively, the 'Option Terms') on all of the terms and provisions contained in this Lease, except this Section 2.2. Tenant may exercise the Option by giving Landlord written notice

thereof not later than one (1) year and not earlier than two (2) years prior to the expiration of Term or the then-current Option Term, as the case may be. In the event any Option is duly exercised, all references to and other provisions of this Lease concerning the Term shall be deemed to refer to the Term as extended by the Option Term. For purposes of the Renewal Options, Tenant must have average Total Gross Sales for the two Lease Years immediately preceding the delivery of its notice of exercise of the first Option of at least $6,000,000 and for the two Lease Years immediately preceding the delivery of its notice of exercise of the second Option of at least $7,500,000 (the 'Minimum Total Gross Sales')."

(Underscoring in original.) Each "Lease Year" ran from October 1 to September 30 of the following year.

In 2009, plaintiff and defendant amended the lease (the Amendment), effective September 30, 2009. The relevant recitals of the Amendment[1] are as follows:

"D.   Tenant has exercised its option to extend the Lease Term and Landlord and Tenant have agreed the Lease Term will be extended for a period of five years (and not for ten years, as provided in the Lease).[2]

"F.   Landlord and Tenant agree certain works of improvement will be completed in the Restaurant Premises.

"G.   Landlord and Tenant now wish to amend the Lease to evidence the extension of the Term, to modify the length of the remaining Option Term, to add provisions for works of improvement in the Premises and to clarify and make current other provisions of the Lease."

The lease terms were amended in the following ways:

---

[1] ORS 42.300 states: "Except for the recital of a consideration, the truth of the facts recited from the recital in a written instrument shall not be denied by the parties thereto, their representatives or successors in interest by a subsequent title."

Additionally, the Amendment explicitly incorporated the recitals into the lease as follows:

"All recitals in this *** Amendment are hereby incorporated into the body of this *** Amendment. This *** Amendment amends the Lease, which is incorporated into this *** Amendment by this reference, and this *** Amendment is hereby incorporated into the Lease by this reference."

[2] The Amendment contains no Recital E.

"Section 2.1. <u>Term.</u> Section 2.1 is amended and replaced with the following:

"2.1 <u>Term.</u> The parties have agreed that the current Term of this Lease is extended to September 30, 2015 ('Expiration Date').

"Section 2.2 <u>Renewal Options.</u> Section 2.2 is amended as follows:

"After the extension of the Term in Section 2.1 above, Tenant shall have one remaining Option to extend the Term for an additional period of five (5) years, on the terms and conditions set forth in Section 2.2 (except for the number of Options and length of the Option Term). There are no other options to renew or extend the Lease. Any reference to 'Option Terms' in the Lease shall mean the one remaining 'Option Term,' as set forth above."

(Underscoring in original.)

The Amendment also provided that "the prevailing party shall be entitled to recover from the other party such sum as the court or arbitrator may adjudge reasonable as attorneys' fees and other costs of litigation at trial, hearing or on appeal of such suit or action."[3]

In April 2014, plaintiff filed a complaint seeking a declaratory judgment that, under the amended lease, defendant did "not have the right to exercise the second Lease renewal option" and that "the terms of the lease * * * [would] expire September 30, 2015." Plaintiff alleged that defendant could not exercise its option to renew the lease because defendant had already exercised its first option and it had not met the minimum total gross sales by September 2013 that would have allowed it to exercise its second option. Plaintiff asserted that the parties had disagreed as to the effects of the Amendment on the renewal option since 2012. The deadline for defendant to give notice to exercise its renewal option, if it were eligible, would have been September 30, 2014.

---

[3] Section 20.9 of the original lease also provided that the prevailing party was entitled to reasonable attorney fees and costs for "any action or proceeding [] necessary * * * to enforce the provisions" of the lease including any "declaratory relief action to interpret" the lease.

At a hearing on plaintiff's motion for summary judgment, the parties disputed whether the remaining renewal option under the amended lease was the first or second option described in Section 2.2 of the original lease, or if it was neither. They also disputed whether defendant was required to meet any minimum gross sales total to exercise the renewal option. If a minimum gross sales total was required, the parties disagreed about the time period in which the gross sales would be measured, although they stipulated that defendant had averaged less than $7.5 million in gross sales for the Lease Years ending in 2012 and 2013.

The trial court framed the issue on summary judgment as "whether there is an ambiguity in the lease so that a trier of fact must decide what the parties intended." The trial court concluded that plaintiff was entitled to a declaratory judgment on summary judgment because the only plausible interpretation of the lease was the interpretation advanced by plaintiff—*i.e.*, defendant had exercised its first option to extend the lease, the first option term was shortened to five years, and defendant did not meet the requirements to exercise its second renewal option. Accordingly, the trial court declared that defendant did not have the right to exercise its second renewal option and the lease would terminate on September 30, 2015. Plaintiff then petitioned for attorney fees and costs under the terms of the lease.

During the hearing on plaintiff's petition for attorney fees and costs, defendant argued that the trial court should deny or reduce the amount of attorney fees for which plaintiff had petitioned. The trial court concluded that plaintiff was entitled to attorney fees and found that the attorney fees requested were reasonable in light of the factors in ORS 20.075 and the terms of Section 20.9 of the lease. It expressed concern, however, about some of the billing and consequently denied the fees plaintiff had requested for work done on the attorney-fee petition. The trial court awarded plaintiff attorney fees and costs totaling $50,395.28.

On appeal, defendant argues that summary judgment was not appropriate because the lease, as amended by

the Amendment, is ambiguous. Defendant also asserts that the attorney fees should not have been awarded or should have been reduced.

Disputes over the meaning of contract provisions may be disposed of by summary judgment if the provisions are unambiguous. *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475 (2006). A contract term is ambiguous if, when examined in the context of the contract as a whole, including the circumstances under which the contract was formed, it is susceptible to more than one plausible interpretation. *Id.* Whether the provisions of a contract are ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997).

Defendant contends that the amended lease is ambiguous as to whether the parties were operating under the first option to extend, which option remained, and which terms applied to the exercise of that option. In particular, defendant contends that the amended lease is ambiguous about whether defendant had to meet a gross sales minimum to exercise the renewal option and, if so, whether that minimum was $6 million or $7.5 million. Defendant asserts that the context in which the Amendment was executed, especially defendant's agreement to pay for significant improvements to the property, creates ambiguity. It notes that, under the trial court's interpretation of the lease, it would have had to meet the higher gross sales minimums much sooner than under the original terms of the lease while also agreeing to spend nearly $500,000 on renovations to the restaurant. Defendant contends that, given that context, a more plausible interpretation of the amended lease is that, in exchange for the improvements, it received the right to automatically renew the lease for five years at its discretion.

Plaintiff responds that the trial court correctly concluded that the amended lease unambiguously provides that defendant exercised its first option to renew and that the terms under which the second option could be exercised included a requirement that defendant average at least $7.5 million in gross sales for the two Lease Years before the year in which its notice of renewal was given.

We first address defendant's contention that the amended lease is ambiguous as to whether the parties were operating under the first option term at the time of the declaratory judgment action. Defendant argues that its exercise of its first renewal option does not necessarily mean that the parties were operating under the first option term because the parties subsequently modified the lease term and the renewal provision.

As noted, Recital D provides: "Tenant has exercised its option to extend the Lease Term and Landlord and Tenant have agreed the Lease Term will be extended for a period of five years (and not for ten years, as provided in the Lease)." Defendant's position that it exercised its first option for 10 years and then the parties instead agreed to extend the original lease for five years independently of the exercise of the option to extend is untenable given Recital D. The recital explicitly states that defendant exercised its option to extend the lease term *and* that extension was for five years instead of 10. The conjunction "and" expresses a link between the lease extension created by the exercised option and the length of the extension. The parenthetical in Recital D shows that the parties intended that the exercised option, not some other agreement, extended the lease term. If the lease was extended by an agreement separate from the exercised option, there would be no need for the parenthetical to clarify that the lease term was extended for five years and not for the original option extension term of 10 years provided in the lease. Put another way, had the extension of the lease been independent of defendant's exercise of it first option, the recital would not have linked the exercise of the option and the extension of the lease.

Defendant also argues that the terms of the amended lease were ambiguous because the text does not state that the parties were operating under the first option term. But, the parties need not have explicitly stated that they were operating under the first option term when the recitals and amendments unambiguously demonstrate that they were. Recital D is clear that defendant exercised its option to extend the lease.

Moreover, Recital G states that the parties amended the lease to reflect the lease extension and to modify the length of the *remaining* option. As amended, Section 2.2 provides that the lease was extended and defendant had only one *remaining* option to extend the lease. Under the original lease, defendant had the possibility of two options to extend. The amended lease states unambiguously that, after the lease was extended for five years by defendant's exercise of the first option and the parties' agreement to reduce the extension to five years, defendant had only one option remaining. That indicates that the parties understood that defendant had exercised its first option.

In addition, the parties' intention to operate under the first option term is shown by the text and context of two sections of the Amendment. Section 2.1 of the Amendment states that "[t]he parties have agreed that the current Term of this Lease is extended to September 30, 2015." Defendant argues that that section is ambiguous as to whether the original lease term was extended by the amendment or by the exercise of the renewal option because it says that "the current Term" is extended rather than saying the "Option Term" ends on that date. That argument fails when we consider that text in the context of the circumstances of the formation of the Amendment. The Amendment was written after defendant had exercised its option to renew and the parties had agreed that the resulting lease extension would be for five years instead of 10. Section 2.1 of the Amendment merely expresses the reality that the amendment was written after the lease had previously been extended until September 2015 by defendant's exercise of its first option.

Additionally, Section 2.2 of the Amendment states that, "[a]fter the extension of the Term in Section 2.1," defendant had "one remaining Option to extend the Term for an additional period of five (5) years." Not only does amended Section 2.2 make it clear that the lease was extended because of defendant's exercise of its first option, that section also describes the consequence of that exercise. Defendant's exercise of its first option extended the lease and the result was that defendant had only one option remaining from the

two options provided in the original lease. No other interpretation gives meaning to all of the words expressed.

In sum, the Amendment unambiguously provides that defendant exercised its first option to extend the lease and the parties agreed that both the exercised option and the remaining option would be for a period of five years. The parties were unambiguously operating under the first option term.

Because we conclude that the parties were operating under the first option term, we next address if the lease as amended was ambiguous as to whether defendant was required to meet a minimum gross sales total to exercise its second option to renew and, if so, the amount of that minimum. Defendant argues that the terms of the lease are ambiguous because the amended lease is silent regarding the circumstances under which defendant could exercise its remaining option to extend. Defendant contends, further, that the parties intended to change the terms and conditions under which it could exercise its remaining option in exchange for defendant's agreement to pay for significant improvements to the premises.

Defendant's interpretation ignores Section 2.2 in the original lease and the Amendment. Amended Section 2.2 states that, after the lease was extended, defendant had one remaining option to exercise "on the terms and conditions set forth in Section 2.2 (except for the number of Options and length of the Option Term)."[4] The terms and conditions under which defendant could exercise the options under Section 2.2 of the original lease are as follows: (1) defendant must not be in default; (2) defendant shall have met the minimum total gross sales set forth later in Section 2.2; (3) defendant shall have two options to extend for 10 years each on all terms and provisions of the lease except Section 2.2; (4) defendant must provide written notice of its

---

[4] Although the original Section 2.2 provided that after the option was exercised the lease would contain all of the terms and conditions other than Section 2.2, it would not make sense for the amended Section 2.2 to not incorporate the terms of the original Section 2.2 other than those it excluded. Otherwise, the Amendment would refer to nonexistent terms and conditions to explain how defendant would exercise the remaining option.

exercise of the option between one and two years before the lease expires; (5) references to the "Term" include the term as extended by the option; (6) defendant must have "average Total Gross Sales for the two Lease Years immediately preceding the delivery of its notice" of at least $6 million to exercise the first option and $7.5 million to exercise the second option.

In amended Section 2.2, the only stated exceptions to the original conditions are the number of options remaining, one, and the length of time that the option extends the lease, five years. Both of those changes to the agreement are also expressed in other places in the amendments and recitals. Nowhere in the recitals or amendments do the parties discuss deleting or amending the gross sales minimums. They are not mentioned. Defendant argues, however, that only the no-default and notice requirements remain after the amendment, but the gross sales minimums do not.

It is implausible in light of the unambiguous text of the Amendment that the parties intended the Amendment to silently delete a condition that appears to have been so important in the original lease. Section 2.2 of the Amendment states that the option terms are the same as the terms under the original Section 2.2, except for two changes that the Amendment explicitly describes—the number and length of the options to extend the lease. The only reasonable understanding of the Amendment is that the parties intended for the terms and conditions of the original Section 2.2 to remain in force except for those that were explicitly changed in the amended Section 2.2. It is implausible that the Amendment would state that the remaining option could be exercised under the conditions and terms of the original Section 2.2 while intending to silently exclude the minimum gross sales total from those conditions.

Alternatively, defendant argues that the lease is ambiguous as to which option, the first or second, remained to be exercised and, therefore, which conditions applied. We have already explained that the Amendment unambiguously provided that defendant had exercised its first option to extend the lease. Thus, the second option remained, and defendant could exercise it under the conditions expressed

in Section 2.2 of the original lease as amended. To exercise the second option under Section 2.2, defendant had to average gross sales totals of at least $7.5 million over the two Lease Years immediately preceding the notice that defendant intended to exercise the option.

Lastly, we address whether the term "two Lease Years immediately preceding the delivery of its notice" is ambiguous with regard to the years in which the minimum gross sales totals would have been counted if defendant had attempted to exercise the second option to renew between September 30, 2013, and September 30, 2014. Defendant's argument that the Lease Years preceding the notice of renewal includes the year in which the notice is given contradicts the unambiguous text of the lease.

Under the lease, a Lease Year is defined as October 1 to September 30 of the following year. The gross sales totals are counted for each Lease Year preceding the notice of renewal, not simply the calendar year prior to the date the notice is given. Under the terms of the lease, defendant could provide plaintiff with notice that it intended to extend the lease anytime between one and two years remaining on the lease. If the Lease Year for purposes of giving notice of renewal includes the year in which defendant gave notice, defendant would not be able to provide complete gross sales numbers for the Lease Year in which it gave notice unless defendant gave notice only on the last day of the notice period. The lease does not indicate that there are different accounting methods depending on the timing of the notice. It is clear, however, that the parties intended to enable defendant to give complete notice throughout the notice period. To do this, the lease states that the gross sales totals are counted "for the two Lease Years immediately preceding the delivery of its notice of exercise of the * * * Option." In context, the "Lease Years immediately preceding" the notice must refer to the two full Lease Years, October 1 to September 30, prior to the time that defendant gave notice.

Defendant could have provided notice to plaintiff that it intended to exercise its second option to renew the lease from October 1, 2013, until September 30, 2014. The two Lease Years preceding this notice period were the

Lease Years ending on September 30 of 2012 and 2013. Defendant concedes that it did not have gross sales totals of over $7.5 million in the Lease Years ending in 2012 and 2013. Accordingly, it could not have met the conditions to validly exercise its second option to renew the lease beyond the term ending on September 30, 2015.

We briefly address defendant's contention that its agreement to pay for improvements to the property provides context to find that the lease is ambiguous. Although we look to the circumstances under which an agreement was made to help us decide whether the terms of the agreement are ambiguous, those circumstances only affect our interpretation of the terms if the words in the agreement support the party's construction. *Morton & Associates, LLC v. McCain Foods USA, Inc.*, 226 Or App 532, 539, 204 P3d 167, *rev den*, 346 Or 363 (2009). The interpretation of the text, as we have discussed above, is unambiguous and cannot sensibly be understood in other ways. The fact that defendant agreed to pay for improvements does not create an ambiguity of the words that the parties used to create the terms and conditions of the lease. The trial court's grant of summary judgment in favor of plaintiff was proper because the terms of the lease were not ambiguous.

Because we affirm the trial court's declaration "that defendant has no right to exercise the second renewal option in the Lease and that the Lease will terminate at the end of the current term on September 30, 2015," plaintiff is entitled to attorney fees under the terms of the lease. Under the lease, the prevailing party in a declaratory judgment action interpreting the lease is entitled to reasonable attorney fees. Defendant renews its arguments made below that the fee award was unreasonable because the litigation was unnecessary and, alternatively, because plaintiff's attorneys spent too much time drafting the complaint. We review for an abuse of discretion.

Before plaintiff filed its declaratory judgment action, plaintiff and defendant disagreed about the terms of the option and whether it could be exercised by defendant. Plaintiff sought a declaratory judgment that defendant could not exercise the second option to end the disagreement

so that it could seek its next restaurant tenant. According to plaintiff, there was no need to wait for the notice deadline because the latest two-year period during which the gross sales were averaged had ended the previous year, in 2013. The trial court did not abuse its discretion by determining that an attorney fee award was appropriate under the circumstances of the litigation.

Defendant's main argument, both on appeal and to the trial court, is that plaintiff's attorneys should not have spent so much time preparing the complaint. The trial court looked closely at the billing rates, hours, and total amount requested. The record shows that the trial court spent time carefully weighing the amount of the requested attorney fees. It questioned plaintiff's attorney at the fee hearing and demonstrated that it had independently reviewed the fee request in detail. After those inquiries, the trial court determined that the amount that plaintiff's attorneys were requesting was reasonable, excluding the fees requested for the time spent on the attorney fees request itself. The trial court did not abuse its discretion in doing so.

In sum, the trial court did not err by granting summary judgment to plaintiff because the lease was not ambiguous. The text, in the context of the agreement as a whole, could be reasonably interpreted to mean only that the parties were operating under the first option and defendant was required to meet the minimum gross sales condition of $7.5 million for the two full Lease Years before the year in which it would have given notice to exercise its option. It was undisputed that defendant was unable to meet those conditions and thus could not exercise its second option to extend the lease. Additionally, the trial court's attorney fees award to plaintiff was not an abuse of its discretion.

Affirmed.