AOYAGI, J.
*399 Wife and husband divorced in 2007. Husband was employed at that time by Turtle Mountain, LLC (TMLLC), and, under the dissolution judgment, wife was awarded half of any future distribution from husband's "deferred compensation." In 2014, wife moved for an order to show cause, asserting that husband had not complied with that aspect of the dissolution judgment. Husband responded that he had fully complied with the judgment. The trial court ultimately ruled in favor of husband and entered a supplemental judgment denying wife the requested relief. Wife appeals the supplemental judgment. On appeal, we conclude that the trial court did not err in denying relief to wife. Accordingly, we affirm.
The relevant facts are undisputed. The parties married in 1995. In 1999, husband began working for Turtle Mountain, Inc. (TMI). At some point, TMI adopted an Incentive Compensation Plan, under which it established deferred compensation accounts for eligible employees, including husband. The plan provided for annual deferred compensation awards. It also provided for special deferred compensation awards in certain circumstances.
*946 Around 2005, TMI received substantial outside investment. The company soon reorganized, which, among other things, led to the creation of TMLLC, and husband began working for TMLLC. Significant changes were made to the incentive compensation program. As a result of those changes, husband entered into two agreements in 2005. First , husband and TMI entered into an "Amendment and Release of Rights Under Turtle Mountain, Inc. Incentive Compensation Plan." Under the terms of that agreement, TMI paid husband a lump sum of $35,000 "in full satisfaction of all of [his] vested and unvested Account balance in the Plan," and husband agreed to no longer receive annual deferred compensation awards. Husband remained eligible for a special deferred compensation award upon the sale of TMLLC, as provided in the agreement. Husband released "any rights under the Plan based on the future growth of the Company in exchange for profits interest units in [TMLLC]." Second , husband and TMLLC entered into a "profit interest *400 units" agreement (PIU Agreement), under which husband received 205,454 profits interest units of TMLLC.
In 2007, husband and wife divorced. They agreed how to divide some assets and disagreed as to others. Of relevance here, they had already agreed to divide equally the $35,000 lump sum payment that husband had received in 2005 in connection with the deferred compensation amendment-and-release agreement, and it is undisputed that wife received half of that amount. They also stipulated to divide equally any "deferred compensation" that husband received in the future. That agreement was effectuated in paragraph 5.1 of the dissolution judgment:
"5.1 Husband's Turtle Mountain, LLC Deferred Compensation. The net balance (after payment of all taxes by Husband that result from this distribution) shall be divided equally between the parties. If Revenue Ruling 2002-22 applies, each party will pay his or her own taxes on the distribution. If necessary to prepare a QDRO, the costs of retaining an expert to divide this account will be shared equally by each party. The parties have agreed to retain Dave Gault at Jones and Roth for this purpose. The date of distribution is subject to the terms of the Deferred Compensation agreement which requires a triggering event."[1]
By contrast, the parties disagreed about the division of husband's TMLLC profits interest units. Husband argued that he should be awarded that asset solely, while wife advocated for equal division. Both parties put on evidence at the dissolution trial regarding the TMLLC profits interest units. After hearing both parties' arguments and evidence, the trial court ultimately awarded the profits interest units solely to husband. Section 5.5 of the dissolution judgment provides that "Husband shall retain all interest in the Turtle Mountain, LLC PIUs which the Court finds to have no present value and depend wholly upon his efforts *401 to increase sales in order to be funded at some future time, if ever."
The divorce was finalized in 2007. Husband continued to work for TMLLC for another six years. In 2012, there was an unsuccessful effort to sell TMLLC. A year later, husband, who was president at the time, resigned. His employment at TMLLC terminated on May 14, 2013. Husband then assumed the role of Chief Executive Officer at another company.
On September 17, 2014, 16 months after husband's termination, TMLLC was sold. As a result of that event, husband received approximately $2 million for the TMLLC profits interest units that he owned at that time.
Wife then moved to show cause for an order and judgment requiring husband to pay her "one-half (1/2) of [Husband's] Turtle Mountain Deferred Compensation as provided by the Judgment, paragraph 5.1," and "the equivalent of her equity interest in the Turtle Mountain Deferred Compensation." Husband opposed the motion, asserting that, *947 under the deferred compensation plan documents, he was only entitled to receive deferred compensation upon the sale of TMLLC if he was still employed at TMLLC or had left employment less than a year prior to the sale. Because his employment with TMLLC had terminated more than a year prior to the sale, husband asserted, he had not received any deferred compensation in connection with the sale. Wife maintained that husband had converted his TMI deferred compensation into TMLLC profits interest units in 2005 and that she was entitled to share in the payment that husband received for his TMLLC profits interest units in 2014.
The trial court rejected wife's argument. The court agreed with husband that, under the dissolution judgment, wife had no interest in husband's TMLLC profits interest units. The court also agreed with husband that, under the operative agreements, husband was entitled to receive a deferred compensation award upon the sale of TMLLC only if husband was still employed at TMLLC or his employment had terminated less than one year prior to the sale. The court entered a supplemental judgment in which it denied wife her requested relief and ruled that husband was in *402 compliance with the terms of the dissolution judgment. Wife appeals.
On appeal, wife assigns error to the trial court's denial of her request for an order and judgment requiring husband to pay her half of his "deferred compensation," which she interprets as including half of what he received for the TMLLC profits interest units that he acquired in 2005. As in the trial court, wife maintains that she is entitled to "her half" of husband's TMLLC profits interest units or a "sum equal to her 1/2 of the PIUs." The parties' dispute turns on interpretation of the dissolution judgment, which references the TMI Incentive Compensation Plan. As such, we review the trial court's decision for legal error. Neal and Neal , 181 Or. App. 361, 365, 45 P.3d 1011 (2002) (reviewing the interpretation of a judgment); see also Couch Investments, LLC v. Peverieri , 359 Or. 125, 132, 371 P.3d 1202 (2016) ("In the absence of an ambiguity, the court construes the words of a contract as a matter of law." (Citation omitted.) ).
We conclude that the dissolution judgment is unambiguous and does not support wife's position. Under paragraphs 5.1 and 5.5 of the dissolution judgment, wife is entitled to receive half of any Turtle Mountain deferred compensation distribution that husband receives, but she is not entitled to receive anything from husband's TMLLC profits interest units. Wife is attempting to circumvent the trial court's 2007 ruling on the latter issue by arguing that the "deferred compensation" subject to division under paragraph 5.1 includes not only any post-divorce distributions made to husband under the TMI Incentive Compensation Plan but also any payments that husband receives for the 205,454 TMLLC profits interest units that he acquired in 2005.
During the dissolution proceeding in 2007, wife specifically requested that she be awarded half of husband's TMLLC profits interest units. The court rejected that request and awarded the TMLLC profit interest units solely to husband. No matter how compelling an argument wife may make about the relationship between the TMI deferred compensation rights that husband released in 2005 and the TMLLC profits interest units that he received in 2005, that *403 argument is misplaced in this proceeding to enforce the dissolution judgment. Reading paragraph 5.1 of the dissolution judgment to encompass husband's TMLLC profit interests units would be directly contrary to paragraph 5.5 of the judgment. Wife's primary argument-that the trial court intended to award her half of husband's TMLLC profit interest units in 2007-therefore must fail.[2] *948 Having concluded that the "deferred compensation" awarded in paragraph 5.1 of the dissolution judgment refers only to the TMI Incentive Compensation Plan, and does not include the TMLLC profits interest units awarded to husband in paragraph 5.5 of the judgment, the only remaining issue is whether husband was entitled to "deferred compensation" upon the sale of TMLLC. Like the trial court, we conclude that he was not. Paragraph 5.1 of the dissolution judgment provides for the net balance of husband's "deferred compensation" to be divided equally between the parties. However, "[t]he date of distribution is subject to the terms of the Deferred Compensation agreement which requires a triggering event." The parties agree that the "Deferred Compensation agreement" is the TMI Incentive Compensation Plan.
Paragraph 4.2 of the plan document provides that, subject to certain conditions, a participant is deemed fully vested in all amounts in the participant's deferred compensation account "in the event of a Sale of the Company on or before the first anniversary of the Participant's Termination of Employment ." (Emphasis added.) Further, the 2005 amendment-and-release agreement provides, in relevant part, that husband is entitled to a special deferred compensation award in the event of the sale of TMLLC if the sale "occurs prior to [his] Termination of Employment (as such term is defined in the Plan) or prior to the first anniversary of the *404 date of [his] Termination of Employment." Thus, if husband had remained employed at TMLLC beyond September 17, 2013, he presumably would have been entitled to a special deferred compensation award upon the sale of TMLLC on September 17, 2014, and wife, in turn, would have been entitled to half of that amount under paragraph 5.1 of the dissolution judgment. But that is not what happened. Husband left his employment at TMLLC in May 2013, and, as a result, he was not entitled to any deferred compensation upon the sale of TMLLC in September 2014.
When the parties divorced in 2007, they may or may not have considered the possibility of husband leaving his employment at TMLLC and, if he did, its effect on his deferred compensation. Nonetheless, when the dissolution judgment was entered, any future payout of deferred compensation to husband was necessarily governed by the terms of the deferred compensation plan, as referenced in paragraph 5.1 of the dissolution judgment.[3]
In sum, husband received $35,000 and 205,454 TMLLC profits interest units in 2005, in connection with the corporate restructuring of his employer and related changes to the incentive compensation program. The parties voluntarily divided the cash payment, and it is not in dispute.
*405 The trial court awarded the TMLLC profit interest units solely to husband in the dissolution judgment. As for any future "deferred compensation" distribution to husband, the parties stipulated to divide that equally, but, under the plan documents, the only relevant scenario in which husband would receive a future deferred compensation award was if TMLLC was sold *949 while husband remained employed there or within one year of his termination. That scenario never came to pass. As a result, when TMLLC was sold in 2014, husband received payment for his TMLLC profits interest units, but he did not receive deferred compensation under the TMI Incentive Compensation Plan. The trial court did not err in rejecting's wife's arguments and concluding that husband is in compliance with the dissolution judgment.
Affirmed.

Both parties agree that the "Deferred Compensation agreement" referenced in paragraph 5.1 of the dissolution judgment is the TMI Incentive Compensation Plan. They disagree as to the significance of the TMLLC reference in the first line of paragraph 5.1-husband contends that it is a typographical error, while wife contends that it supports her argument that husband's "deferred compensation" includes TMLLC profit interest units-but, ultimately, there is no dispute as to the "agreement" referenced in paragraph 5.1.

The failure of that argument also defeat's wife's second assignment of error, in which she contends that the trial court erred in not awarding her relief for a "breach of duty" by husband. Essentially, she argues that husband failed to protect her interest in his TMLLC profits interest units when he executed amendments to the PIU Agreement in 2008 and 2010. Because wife has no interest in husband's TMLLC profits interest units under the terms of the dissolution judgment, we reject the second assignment of error without further written discussion.

Wife emphasizes the fact that the value of husband's deferred compensation under the TMI Incentive Compensation Plan was "frozen" at $593,321 in 2005, which represented 5% of the book value of the company at that time, less the $35,000 payment. Wife appears to believe that that means that husband was entitled to a guaranteed deferred compensation payment of $593,321 in the future. However, that is inconsistent with the plan document and the 2005 agreement. After 2005, husband's only guaranteed payment was the immediate $35,000 lump sum; any future deferred compensation payment was contingent on future events. Indeed, in the dissolution proceeding, one of the parties' attorneys stated on the record that, although the estimated value of the deferred compensation plan was $593,321, "it must be understood though, Your Honor, that deferred compensation can only come to the parties upon certain contingencies occurring." TMI's founder also testified at the dissolution trial that, in order to fund the deferred compensation, TMLLC would have to sell in the future for approximately $28 million, a significant premium over its then-present value. As such, everyone apparently understood in 2007 that, if the company did not sell, or if it sold below a certain price, husband would not receive any future deferred compensation payment. It is less clear whether anyone paid attention to the fact that, even if the company sold and did so at a sufficient price, husband would not receive a deferred compensation payment if he had left employment more than one year prior to the sale. Whether the parties realized that at the time, however, does not affect the outcome.