***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted September 26, reversed and remanded
December 29, 2022

In the Matter of the Marriage of

Sheetal DADU,
*Petitioner-Respondent,*
*and*

WASHINGTON COUNTY DISTRICT
ATTORNEY CHILD SUPPORT,
*Petitioner,*
*and*

Saurabh DADU,
*Respondent-Appellant.*

Washington County Circuit Court
18DR03555; A175295

Keith R. Raines, Judge.

Ruth A. Casby argued the cause for appellant. Also on the briefs were Janet M. Schroer and Hart Wagner LLP.

Andrew W. Newsom argued the cause and filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

This appeal involves the interpretation of a stipulated supplemental judgment governing the division of two of husband's defined-contribution retirement accounts. The principal issue is whether wife's marital portion of the accounts includes earnings (defined as gains, losses, dividends, and interest) accumulated between the dissolution date and the date of disbursement via Qualified Domestic Relations Orders (QDROs). On appeal, husband argues that when the trial court approved wife's proposed QDROs awarding her earnings on her one-half share of the marital portion, the trial court impermissibly modified the parties' property settlement agreement that was reduced to the stipulated supplemental judgment. Alternatively, husband assigns error to the trial court failing to effectuate the unambiguous terms of the parties' intended property settlement agreement. Conversely, wife argues that she is entitled to earnings on her share of the two accounts, and that although the language of the supplemental judgment seems ambiguous, it is resolved in her favor through interpretation of the text and context of the judgment. We conclude that the trial court incorrectly interpreted the parties' property settlement agreement, and therefore impermissibly modified the stipulated supplemental judgment. Accordingly, we reverse and remand.

We review the trial court's interpretation of a stipulated judgment for legal error. *Tucker and Tucker*, 293 Or App 398, 402, 428 P3d 945 (2018). The initial question of whether a judgment provision is ambiguous is also a question of law. *Harris v. Warren Family Properties, LLC*, 207 Or App 732, 737, 143 P3d 548 (2006). Where the court's interpretation depends on extrinsic evidence, "we review the court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Id.* (quoting *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 319, 129 P3d 773, *rev den*, 341 Or 366 (2006) (internal quotations marks omitted)).

Husband and wife were divorced on December 28, 2018, through a general dissolution judgment. The general judgment resolved maintenance spousal support, child

support, custody, and parenting plan issues; however, it left some issues unresolved and, thus, warranted supplemental judgments, including the division of the property at issue in this case—husband's Intel 401(k) Savings Plan and Intel Retirement Contribution Plan. On October 3, 2019, the trial court received both a mediated settlement agreement and exhibits outlining the division of the two accounts. In February 2020, the court entered a supplemental judgment incorporating the settlement terms, which read, in pertinent part:

"1.   Property Awarded to Wife:

"\* \* \* \* \*

"1.2   One-half of the marital portion of Husband's Intel 401(k) Savings Plan as of December 31, 2018[,] to be transferred to Wife by the terms of an appropriate Qualified Domestic Relations Order;

"1.3   One-half of the martial portion of Husband's Intel Retirement Contribution plan as of December 31, 2018[,] to be transferred to Wife by the terms of an appropriate Qualified Domestic Relations Order;

"\* \* \* \* \*

"2.   Property Awarded to Husband:

"\* \* \* \* \*

"2.2   The remainder of Husband's Intel 401(k) Savings Plan after transfer of Wife's one-half interest in the marital portion of the plan as of December 31, 2018;

"2.3   The remainder of Husband's Intel Retirement Contribution plan after transfer of Wife's one-half interest in the marital portion of the plan as of December 31, 2018[.]"

In September 2020, wife filed two proposed QDROs to which husband objected. Both QDROs had identical provisions, each corresponding to one of the retirement accounts reading "[wife's] award is entitled to earnings (defined as gains, losses, dividends and interest) from [December 31, 2018,] to the date that the award is segregated from [husband's] account." Husband objected to those provisions and correspondingly to the calculation of wife's award from each account.

In October 2020, the trial court heard husband's objections to the QDRO terms. At the hearing, husband and wife provided conflicting testimony about whether the inclusion of earnings in wife's awards was discussed during mediation. The trial court characterized the situation as "a swearing contest between husband and wife." The court identified that a presence of a specific dollar amount in the judgment is straightforward, whereas a lack thereof warrants inclusion of "pluses and minuses." Accordingly, the trial court highlighted the significance of the two accounts in issue lacking specified dollar amounts, unlike one of husband's other accounts that was awarded to wife in full in the February 2020 supplemental judgment. Ultimately, the court held in wife's favor, ordering in December 2020 that she was "entitled to earnings (defined as gains, losses, dividends and interest) incurred on [her] one-half of the marital portion of Husband's Intel Retirement Savings Account and Intel 401(k) from December 31, 2018[,] to the date that the award is segregated from [Husband's] account" and correspondingly approved wife's proposed QDROs. In its order, the trial court stated that it is "fair" that wife's one-half award incur earnings between the date of divorce and date that the accounts are divided via QDROs. On December 30, 2020, the trial court entered supplemental judgments that contained QDROs entitling wife to earnings on both of the retirement accounts.

When the terms of a property settlement agreement are incorporated in a marital dissolution judgment, construction, operation, and the effect of the terms are to be construed in the same way as any other contractual terms. *Moon v. Moon*, 140 Or App 402, 407, 914 P2d 1133, *rev den*, 323 Or 484; 324 Or 305 (1996); *McDonnal and McDonnal*, 293 Or 772, 780, 652 P2d 1247 (1982). Contract interpretation presents a question of law that we review for legal error. *Eagle-Air Estates Homeowners Assn. v. Haphey*, 272 Or App 651, 656, 354 P3d 766 (2015), *rev den*, 359 Or 166 (2016). In interpretating a contract, we first "examine[] the text of the disputed provision, in the context of the document as a whole," inquiring whether the provision at issue is ambiguous. *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997); *see also Batzer*, 204 Or App at 315-17 (explaining

that, in determining whether a contract term is ambiguous, a court must consider evidence of the circumstances of contract formation, if provided by the parties, and that *Yogman* omitted that step only because no such evidence was presented in *Yogman*). In the absence of an ambiguity, the court construes the words of a contract as a matter of law, and the analysis ends. *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971).

If the text and context are ambiguous—meaning capable of more than one reasonable interpretation or having no definite significance—then extrinsic evidence of the parties' intentions may be examined. *Id.* at 292-93. Extrinsic evidence can include the circumstances under which the agreement was made, including the situation of the parties and the subject. ORS 42.220. As a last resort, we may employ maxims of construction to interpret the ambiguous terms. *Baertlein and Stocks*, 303 Or App 51, 61, 464 P3d 433 (2020).[1]

We begin with the text of the supplemental judgment, specifically, the phrase "as of December 31, 2018," which appears in Paragraphs 1.2, 1.3, 2.2, and 2.3 of the judgment. The parties present different interpretations of the phrase on appeal. Husband interprets the phrase "as of December 31, 2018" as a valuation date for wife's one-half interest in the marital portion. Wife argues that husband's interpretation would render "as of December 31, 2018" meaningless surplusage. Rather, wife interprets the phrase as a date upon which her award should be effective, because the judgment's inclusion of "marital portion" creates a valuation

---

[1] Extrinsic evidence is permissibly considered to determine ambiguity, and to resolve ambiguity. When applying the "three steps" of contract interpretation described in *Yogman*, 325 Or at 361-65, it is important not to forget the clarification in *Batzer*. 204 Or App at 316-17 (synthesizing *Yogman* with *Abercrombie v. Hayden Corp.*, 320 Or 279, 883 P2d 845 (1994)). On its face, *Yogman* could be read to suggest that extrinsic evidence cannot be considered at the first step of interpretation, but as explained in *Batzer*, that would be a misreading of *Yogman*. *Id.* At the first step of interpretation, a "court can properly consider the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract." *Id.* at 317 (emphasis added); *see also* ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting.").

date in and of itself. Wife argues that the inclusion of "as of December 31, 2018" is an unnecessary modifier of the noun phrase "marital portion" and contends that its inclusion as a fixed effective date ensures wife could receive earnings after that date on her portion in light of an unspecified date for the QDRO transfer.

As wife explained during oral argument, her argument surrounding "as of December 31, 2018" as an effective date rather than a valuation date requires the marital portion to be treated, for division purposes, as shares that will accrue earnings and fluctuate in value as opposed to discrete dollar values as of that date. In contrast, husband explained that the marital portion is a discrete cash value set on December 31, 2018, the valuation date. Looking to the context of the agreement, we conclude that husband's interpretation—as a cash valuation date—is correct.

First, we note as context other portions of the judgment, specifically Paragraph 1.7, which states that wife is awarded "[o]ne-half of the 6,784 marital shares (3,392 shares) of Intel Common Stock in Husband's *** account." Paragraph 1.7 is an example of a division of shares that are capable of accumulating earnings and fluctuating in value until the time of disbursement. The portions of the judgment at issue on appeal are not written in this manner, and wife's interpretation would render that distinction meaningless.

Even if ambiguity in the agreement existed, however, extrinsic evidence supports husband's interpretation. At trial, the parties submitted as an exhibit a mediation agreement memorandum prepared in September 2019, containing a spreadsheet breaking down various property into dollar values and outlining the portion allocated to husband and to wife. Row numbers 4 and 5 in the asset column provide helpful information; each row contains a dollar amount circled as the "divisible amount." For the Intel 401(k) Savings Plan, the divisible amount is $379,239, and the Intel Retirement Contribution Plan's divisible amount is $106,243. Those amounts were calculated by subtracting the premarital value from the value on December 31, 2018; hence, the divisible amounts presumably translate to the "marital portion" values in the judgment. Because the

marital portions associated with the two accounts are discrete cash values—not assets or stock holdings—husband's interpretation, that setting December 31, 2018, is included as the valuation date, is correct.

In view of our conclusion that husband's interpretation is correct, we now consider the issue of whether the trial court impermissibly modified the parties' property settlement agreement as reduced to the February 2020 stipulated supplemental judgment, reviewing for legal error. *St. Sauver and St. Sauver*, 196 Or App 175, 188, 100 P3d 1076 (2004). It is well settled that parties to marital dissolution proceedings may enter into settlement agreements dictating the dissolution terms. *McInnis and McInnis*, 199 Or App 223, 230, 110 P3d 639 (2005). Trial courts review settlement agreements for fairness and equity and once the agreements are approved, they "are to be enforced as a matter of public policy." *Id.* Ordinarily, courts do not have the power to modify a property division incorporated into a dissolution judgment. *St. Sauver*, 196 Or App at 178.

The trial court, in its December 2020 order regarding the form of the QDROs, ordered that wife should be entitled to earnings on her share because "it is fair." Whether fairness was a perceived issue at that time is immaterial, as the trial court had already approved the property settlement agreement and incorporated it into the February 2020 supplemental judgment. No party is arguing that the agreement is unenforceable due to contravening the law or public policy.

Because we agree with husband's interpretation of the February 2020 supplemental judgment terms, we conclude that the trial court erred in interpreting the terms of the property settlement agreement and consequently erred when it awarded wife earnings in its December 2020 order, impermissibly modifying the February 2020 stipulated supplemental judgment. Thus, we reverse the supplemental judgments regarding the QDROs and remand for the court to enter new supplemental judgments that are consistent with the February 2020 stipulated supplemental judgment.

Reversed and remanded.